King Sang CHOW, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

Nos. 94–1939, 95–1552.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 8, 1995.

Decided May 1, 1997.

Rehearing Denied June 30, 1997.

concurring) and *id.* at 1302 (Diane P. Wood, J., concurring).

Royal F. Berg, argued, Chicago, IL, for King Sang Chow.

Janet Reno, U.S. Atty. Gen., Washington, DC, Samuel Der–Yeghiayan, I.N.S., Chicago, IL, James B. Burns, Office of the U.S. Atty., Chicago, IL, William J. Howard, Thomas W. Hussey, Dept. of Justice, Civil Div., Immigration Litigation, Washington, DC, David J. Kline, Alison R. Drucker, argued, Dept. of Justice, Office of Immigration Litigation, Washington, DC, for I.N.S.

Before WOOD, Jr., FLAUM and MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Pursuant to section 106(a) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1105a(a), King Sang Chow or David Chow ("Chow") petitioned this court for review of two decisions by the Board of Immigration Appeals ("BIA") issued in connection with deportation proceedings instituted against him. While Chow's petitions were still pending before us, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996). Amongst other changes, the AEDPA amended section 106 of the INA to preclude judicial review of final orders of deportation issued against aliens deportable under any of several enumerated statutory provisions. § 440(a), 110 Stat. at 1276–77. The BIA had ordered Chow deportable under two of these selected provisions. Consequently, the Immigration and Naturalization Service ("INS") filed the instant motion to dismiss Chow's consolidated petition, contending that section 440(a) divested us of jurisdiction over Chow's petition. We agree and, accordingly, dismiss Chow's petition.

## I.

Chow is a native of Hong Kong and a citizen of the United Kingdom. He entered the United States as a permanent resident alien in 1971 and has remained here since. He is married to a United States citizen, and the couple have one child who is also a United States citizen. In 1977, Chow was convicted of unlawful possession of an automatic pistol in New Jersey state court, and in 1991, he was convicted of using a telephone to facilitate the crimes of distribution of and possession with intent to distribute heroin in the United States District Court for the Eastern District of New York. In 1992, the INS instituted deportation proceedings based on these charges, and an Immigration Judge ("IJ") found that Chow was deportable under two provisions of the INA. The IJ found Chow deportable under section 241(a)(2)(B)(i) as an alien convicted of a controlled substance violation and under section 241(a)(2)(C) as an alien convicted of a firearm violation.[1] The IJ also denied Chow's request for discretionary relief from deportation under section 212(c) of the INA.

Both the BIA and the Fifth Circuit affirmed the IJ's decision. Chow moved the BIA to reopen the proceedings contending that a subsequent BIA decision entitled him to apply concurrently for an adjustment of status under section 245 of the INA and a waiver of inadmissibility under section 212(c) of the INA and that accordingly, he now was entitled to relief from deportation. The BIA denied his motion, and Chow filed a petition for review of that order in this court. He also filed a second motion to reconsider/reopen deportation proceedings, contending that new facts made him eligible for concurrent section 212(c) and section 245 relief. The BIA again denied his motion, and he petitioned this court for review of that order as well. We consolidated the petitions and heard oral argument. However, at Chow's request, we stayed proceedings in the matter because several proposed regulations would

---

1. The INS also alleged that Chow was deportable under section 241(a)(2)(A)(iii) as an alien convicted of an aggravated felony, but the IJ rejected this allegation.

have resolved Chow's claims if enacted. While these proceedings were stayed, President Clinton signed the AEDPA, making it effective. The INS then moved to dismiss Chow's appeal contending that pursuant to section 440(a) of the AEDPA, we no longer had jurisdiction over the action.

## II.

Before the AEDPA became law, section 106(a) of the INA vested us with exclusive jurisdiction to hear petitions for review of all final deportation orders. 8 U.S.C. § 1105a(a) (Supp.1996). However, section 440(a) of the AEDPA amended section 106(a) to provide that:

> (10) Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in [section 241(a)(2)(A)(iii), (B), (C), or (D) of the INA], or any offense covered by [section 241(a)(2)(A)(i) of the INA], shall not be subject to review by any court.

Sec. 440(a), 110 Stat. at 1276–77. Here, the IJ and the BIA found Chow deportable under sections 241(a)(2)(B)(i) and 241(a)(2)(C), and the record clearly supports these findings. Chow does not contest that he is an alien, and the record contains two records of conviction: a 1977 state conviction for carrying a .32 caliber revolver and a 1991 conviction for use of a telephone to facilitate distribution of heroin in violation of 21 U.S.C. § 843(b). A .32 caliber revolver is a firearm as defined in 18 U.S.C. § 921(a). Likewise, heroin is a controlled substance within the meaning of 21 U.S.C. § 802, and 21 U.S.C. § 843(b), prohibiting use of a communication facility to facilitate certain felony controlled substance offenses, is a law relating to a controlled substance. Thus, Chow would seem to be deportable under section 241(a)(2)(C) as alien convicted of possessing or carrying a firearm and under section 241(a)(2)(B) as an alien convicted of violating a law relating to controlled substances. Moreover, Chow does not contest the factual allegations of these convictions. Rather, he maintains that he is not deportable as an alien convicted of possessing a firearm because his conviction predates amendments to the INA making his conduct a ground for

deportation. However, the text of section 241(a)(2)(C) and the legislative history surrounding it indicate that Congress intended it to apply to aliens who have committed the prohibited firearms offenses at any time after their entry into the United States as long as the aliens receive notice of the deportation proceedings after March 1, 1990. *Lopez–Amaro v. INS*, 25 F.3d 986, 988–89 (11th Cir.1994). Chow received notice of the deportation proceedings instituted against him after March 1, 1990. Therefore, on its face, section 440(a) would seem to deprive us of jurisdiction over Chow's petition.

### A.

However, Chow argues that section 440(a) does not apply to his petition because he does not seek review of a final "order of deportation" as defined in section 440 of the AEDPA. He notes that section 440(b) defines an order of deportation as:

> the order of the special inquiry officer, or other such administration officer ... concluding that the alien is deportable, or ordering deportation.

Sec. 440(b), 110 Stat. at 1277. He reasons that section 440(b) defines "order of deportation" as used in section 440(a), thereby limiting those orders for which section 440(a) precludes judicial review. He notes that he seeks review of two BIA orders denying his motions to reconsider and to reopen deportation proceedings and that neither of these types of orders is listed in section 440(b). As such, he reasons that he does not seek review of a final order of deportation as defined in section 440(b), and that, therefore, section 440(a) does not apply to his petition.

Unfortunately for Chow, section 440(b) does not purport to define "order of deportation" only as used in section 440(a). Rather, section 440(b) amends section 101(a) of the INA to add a definition of "order of deportation," governing its meaning throughout the entire act. § 440(b), 110 Stat. at 1277. Therefore, if Chow correctly interprets section 440(b) as excluding BIA orders such as orders denying motions for reconsideration and motions to reopen from the meaning of "order of deportation," section 440(b) must preclude those orders from the meaning of

"order of deportation" as used throughout the INA.

Such a reading would deprive us of jurisdiction to review any BIA orders denying motions to reconsider or reopen deportation proceedings because no provision in the INA expressly authorizes judicial review of such orders. Instead, courts have construed "order of deportation" as used in section 106(a)'s general grant of jurisdiction over petitions for review to include BIA orders, such as the instant orders, and have extended our jurisdiction to review final orders of deportation under section 106(a) to include jurisdiction over petitions for review from such orders. *Johnson v. INS*, 962 F.2d 574, 576 (7th Cir. 1992); *Oviawe v. INS*, 853 F.2d 1428, 1430 (7th Cir.1988); *see Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964).

■ However, we do not read section 440(b) as eliminating our jurisdiction to review BIA orders such as those at issue in this petition because other provisions in the amended INA indicate that Congress did not intend to remove the courts' jurisdiction over petitions for review of such orders. Before Congress enacted the AEDPA, section 106 provided that "whenever a petitioner seeks review of an order under this section, any review sought with respect to a motion to reopen or reconsider such an order shall be consolidated with the review of the order." 8 U.S.C. § 1105a(a)(6) (Supp.1996). The AEDPA did not alter this provision. After Congress enacted the AEDPA, Congress enacted the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"). Pub.L. No. 104–208, division C, 110 Stat. 3009 (1996). The IIRIRA repeals section 106 of the INA and replaces it with another judicial review provision. IIRIRA § 306(a) & (b).[2] This new judicial review provision adopts a consolidation section that is substantially similar to the provision contained in the old section 106. IIRIRA § 306(a). If Congress intended to abrogate judicial review of orders denying motions to reconsider and motions to reopen by omitting such orders from its definition of "order of deportation" in section 440(b), the consolidation section in the new judicial review provision would be meaningless. Whenever possible, we will construe a statute to give effect to all its provisions. *United States v. Wagner*, 29 F.3d 264, 266 (7th Cir.1994). A more likely interpretation of section 440(b) is that Congress intended to clarify at what point an order becomes a final order of deportation subject to judicial review. *See* National Lawyers Guild, *Immigration Law and Defense* 4 (Special Supp. to Release No. 18 Sept. 1996). Moreover, we will not construe a statute to alter a judicially created concept unless Congress clearly expresses its intent to do so. *See United States v. Noland*, —— U.S. ——, ——, 116 S.Ct. 1524, 1527, 134 L.Ed.2d 748 (1996). Here, Congress has not clearly expressed an intent to depart from the long line of Supreme Court and appellate court decisions interpreting "order of deportation" to include orders denying motions to reconsider and reopen. Thus, we decline to interpret the definition in section 440(b) so broadly that it would divest us of jurisdiction to review BIA orders other than those explicitly divested under 440(a). "Any final order of deportation" as used in 440(a) includes orders to reconsider or reopen any such final order of deportation and removes from our jurisdiction Mr. Chow's appeal.

### B.

■ Next, Chow contends that we should not apply section 440(a) to his petition because his petition was pending at the time Congress enacted the AEDPA. He reasons that because his petition was pending at the time that the AEDPA became law, applying section 440(a) to his petition would retroactively effect his petition. Generally, a court should not apply a statute retroactively unless Congress clearly states that a statute should so apply. *See Landgraf v. USI Film Products, Inc.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994). However, applying a newly enacted statute to a pending case will not always result in a retroactive application. *Id.* at 269, 114 S.Ct. at

2. Section 306(c) provides that section 306 shall apply to final orders of deportation or removal and motions to reopen filed on or after the date of enactment of the IIRIRA. Thus, its substantive provisions do not apply to Chow's petition.

1499. To this end, the Supreme Court recently clarified the proper analysis we should employ when determining whether a statute should apply to pending cases. *Id.* at 244, 114 S.Ct. at 1486.

 As the Court explained, in a case such as this, where Congress fails to prescribe a statute's proper reach, a court must resort to "judicial default rules." [3] *Id.* at 280, 114 S.Ct. at 1505. Under these rules, a court should apply the law in effect at the time it renders its decision. *Id.* at 264, 114 S.Ct. at 1496. However, if applying a newly enacted statute to a pending action would attach new legal consequences to conduct occurring before the act became effective, applying the statute would have a retroactive effect on the pending action, and a court should not apply it. *Id.* at 280, 114 S.Ct. at 1505. A statute attaches new legal consequences when it "impair[s] rights that a party possessed when enacted, increase[s] a party's liability for past conduct or impose[s] new duties with respect to transactions already completed." *Id.*

 Following these rules, courts have refused to apply statutes that "affect[ ] substantive rights, liabilities, or duties" to pending actions, *Landgraf,* 511 U.S. at 278, 114 S.Ct. at 1504, while "regularly appl[ying] intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." *Id.* at 274, 114 S.Ct. at 1501. However, merely characterizing a statute as procedural or substantive is not dispositive in determining whether a newly enacted statute should apply to pending actions. *Id.* at 275 n. 29, 114 S.Ct. at 1502 n. 29. Courts refrain from applying a statute retroactively to avoid the unfairness that results from imposing new burdens on

people's conduct after they have engaged in that conduct. *Id.* at 270, 114 S.Ct. at 1500. Unfairness results because people rely on the existing legal provisions in planning and conducting their affairs. *See id.* at 265, 114 S.Ct. at 1497. Therefore, in determining whether a statute should apply to pending actions, a court must look to the nature and extent of the change in the law and the degree and connection between the operation of the new statute and the relevant past conduct. *Id.* at 270, 114 S.Ct. at 1499–1500.

 Because jurisdictional statutes regulate secondary conduct rather than primary conduct, people generally do not rely on them to the extent necessary to invoke the presumption against retroactivity. *Landgraf,* 511 U.S. at 275, 114 S.Ct. at 1502. However, as we recognized in *Reyes–Hernandez v. INS,* 89 F.3d 490, 492 (7th Cir. 1996), under certain circumstances, people may rely on a jurisdictional rule to the extent that altering that rule would attach new legal consequences to a completed event. In such circumstances, a statute, although procedural, is retroactive, and the court should not apply it to pending actions. *Id.* Therefore, although section 440(a) is a jurisdictional statute, we must examine the relationship between the change in the law it effected and the petitioning alien's conduct before section 440(a) went into effect to determine whether it should apply to a pending petition.

This issue is not entirely new to us. In *Reyes–Hernandez* we refused to apply section 440(a) to a pending petition because we found that the petitioning alien might have conceded deportability in reliance on the availability of discretionary relief and judicial review. *Id.* at 492–93. In reaching this holding, we noted that before section 440(a)

---

**3.** Unlike § 440(a), several provisions in the AEDPA contain express statements regarding each provision's effect on pending proceedings or pre-enactment events. However, some of these subsections provide that the subsection shall apply to pre-enactment conduct or pending proceedings, while others provide that they shall not so apply. *Compare,* AEDPA § 401(f) ("The amendments made by this section shall take effect on the date of the enactment of this Act and shall apply to aliens without regard to the date of entry or attempted entry into the United States.") *and* AEDPA § 413(g) ("The amendments made

by this section shall take effect on the date on enactment of this Act and shall apply to applications filed before, on, or after such date if final action has not been taken on them before such a date.") *with* AEDPA § 440(f) ("The amendments made by subsection (e) shall apply to convictions entered on or after the date of enactment of this Act. . . ."). Therefore, contrary to Chow's argument, the absence from section 440(a) of an express provision concerning its application to pending petitions does not evidence Congressional intent to make section 440(a) ineffective on pending petitions.

went into effect, an alien who conceded deportability may have been entitled to discretionary relief under section 212(c) of the INA and judicial review if the IJ and BIA denied him relief. *Id.* at 492. We also noted that we had vacated BIA orders denying discretionary relief on "a nontrivial number of occasions" and that after the AEDPA went into effect, neither discretionary relief nor judicial review was available. *Id.* We found it unlikely that Congress meant to "mousetrap" aliens by offering them the possibility of discretionary relief and judicial review if they conceded deportability, then denying them such relief once they conceded deportability. *Id.* We then concluded that the alien petitioning for review in *Reyes–Hernandez* may have relied on this relief when he conceded deportability, and thus, that applying section 440(a) to his petition would attach new legal consequences to his concession. *Id.* at 492–93. However, in reaching this conclusion, we placed particular importance on the alien's refusal to admit that he would have conceded deportability or that he would have been found deportable had he known that appellate relief would be unavailable. *Id.* at 493.

On the other hand, in *Arevalo–Lopez v. INS,* 104 F.3d 100, 101 (7th Cir.1997), we decided that section 440(a) precluded us from reviewing a petition from a BIA order denying the alien discretionary relief. There, the alien contested deportability before the IJ. The IJ found him deportable, but granted him discretionary relief. *Id.* at 100–01. On appeal, the BIA decided against the alien and found him deportable. *Id.* at 101. We dismissed his petition for review for lack of jurisdiction, holding that *Reyes–Hernandez* was inapplicable because the alien contested deportability and had no colorable defense to deportability. *Id.*

Although Chow also contested deportability before the IJ, he argues that *Arevalo–Lopez* does not apply to his petition because he conceded deportability before the AEDPA went into effect. He contends that he conceded deportability by failing to file objections to the IJ's findings. He argues that he, like the alien in *Reyes–Hernandez,* forewent an opportunity to contest deportability (albeit an opportunity to contest deportability on

appeal rather than in his initial deportation hearing) because at the time of his appeal he may have been entitled to discretionary relief and judicial review. However, the record here, unlike the record in *Reyes–Hernandez,* does not indicate that Chow acted in reliance on the availability of either form of relief. As stated above, unlike the alien in *Reyes–Hernandez,* Chow contested deportability before the IJ and conceded deportability only implicitly by failing to file objections to the IJ's finding that he was deportable under section 241(a)(2)(B)(i) (as an alien convicted of a controlled substance violation) and by applying for an adjustment of status under section 245. Alternatively, he continued to object to his deportability under section 241(a)(2)(C) (as an alien convicted of a firearm offense) before both the BIA and the Fifth Circuit. *See Kin Sang Chow v. INS,* 12 F.3d 34, 37–38 (5th Cir.1993) (rejecting Chow's contention that he could not be deported under section 241(a)(2)(C) because the underlying charge was based on a firearms conviction which occurred before Congress enacted section 241(a)(2)(C)); *Matter of Chow,* Int. Dec. 3199 (BIA 1993) (same). Indeed, in his petition for review to this court, Chow continues to maintain that he should not be deportable under section 241(a)(2)(C). (Pet'r Br. at 25–31).

Additionally, unlike the alien in *Reyes–Hernandez,* Chow has received judicial review of the BIA's order denying him discretionary relief. Therefore, if applied to his petition, section 440(a) would upset only his expectation of further judicial review, stemming from his motions to reconsider and reopen deportation proceedings. However, we vacate orders denying motions to reconsider or reopen proceedings on a smaller number of occasions than we vacate orders denying discretionary relief.

Moreover, the IJ found Chow deportable as an alien convicted of a controlled substance offense based on a 1991 record of conviction and deportable as an alien convicted of a firearms offense based on a 1977 record of conviction, and Chow did not contest the validity of either of these convictions. Despite this compelling evidence of deportability, Chow has not suggested what objec-

tions he would have raised to these findings, nor has he contended, even conclusorily, that had he raised objections to these findings, the BIA would have sustained them. Therefore, we cannot reasonably infer that Chow declined to raise objections to the IJ's finding of deportability in reliance on the then existing procedural provisions for discretionary relief and judicial review, nor can we find that Chow had colorable objections to the IJ's findings, which he refrained from raising. See *Arevalo–Lopez,* 104 F.3d at 101. Instead, Chow's failure to raise objections to one finding of deportability while continuing to object to the second finding of deportability coupled with his failure to articulate what colorable objections he would have filed more likely indicate that Chow failed to file objections simply because he had no meritorious objections to file. Therefore, we hold that section 440(a) bars review of his petition. See *Arevalo–Lopez,* 104 F.3d at 101.[4]

### C.

■■■ Chow also argues that we should not apply section 440(a) to his petition because it would retroactively effect his pre-AEDPA criminal conduct. He claims that section 440(a) impermissibly attaches new legal consequences to his past criminal conduct because it makes him deportable without the benefit of judicial review, while at the time that he committed the acts, he could have been deported only after judicial review of the BIA deportation order. However, withdrawing judicial review does not increase Chow's liability or penalties for the criminal conduct at issue because it merely alters the procedure by which the INS may effect his deportation. Courts routinely hold that the INS may lawfully deport an alien under a statute which makes certain conduct a ground for deportation even if the alien engaged in the conduct before the statute went into effect. *Marcello v. Bonds,* 349 U.S. 302, 314, 75 S.Ct. 757, 764, 99 L.Ed. 1107 (1955)

(allowing deportation based on conviction that was not a ground for deportation at the time the alien was convicted); *Hamama v. INS,* 78 F.3d 233, 235–36 (6th Cir.1996) (same); *Ignacio v. INS,* 955 F.2d 295, 298 (5th Cir.1992) (same); *United States v. Bodre,* 948 F.2d 28, 32–33 (1st Cir.1991) (same). Accordingly, making deportation a consequence of certain criminal acts does not attach new liabilities or penalties to those acts. Therefore, a statute which merely alters the procedure for effecting a deportation based on conduct which was a basis for deportation at the time the alien engaged in the conduct, likewise, does not attach new legal consequences to the alien's conduct.

■■■ This reasoning coincides with Supreme Court decisions in a similar area. The Supreme Court strictly construes the *Ex Post Facto Clause*—a constitutionally guaranteed presumption against retroactivity in criminal actions—to prohibit the application of new statutes creating or increasing punishments after the defendant has engaged in the criminal conduct. However, the Court also has recognized that intervening procedural changes which operate to a criminal defendant's disadvantage do not violate the stringent prohibition against retroactivity contained in the *Ex Post Facto Clause.* *Landgraf v. USI Film Products,* 511 U.S. 244, 275 n. 28, 114 S.Ct. 1483, 1502, 128 L.Ed.2d 229 (1994). Deportation proceedings are civil rather than criminal proceedings, and deportation is not considered criminal punishment. *Carlson v. Landon,* 342 U.S. 524, 537, 72 S.Ct. 525, 533, 96 L.Ed. 547 (1952); *Harisiades v. Shaughnessy,* 342 U.S. 580, 594, 72 S.Ct. 512, 521, 96 L.Ed. 586 (1952). As such, aliens involved in deportation proceedings are not entitled to the stringent prohibition against retroactivity that the *Ex Post Facto Clause* guarantees, but receive the benefit of the presumption against retroactivity discussed in *Landgraf.* If intervening procedural changes which operate to

---

**4.** Our decision in this action and *Arevalo–Lopez* is in accord with other circuits addressing this issue. E.g., *Boston–Bollers v. INS,* 106 F.3d 352 (11th Cir.1997); *Duldulao v. INS,* 90 F.3d 396 (9th Cir.1996); *Hincapie–Nieto v. INS,* 92 F.3d 27 (2d Cir.1996); *Kolster v. INS,* 101 F.3d 785 (1st Cir.1996); *Mendez–Rosas v. INS,* 87 F.3d

672 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 694, 136 L.Ed.2d 617 (1997); *Qasguargis v. INS,* 91 F.3d 788 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997). All have concluded that section 440(a) applies to petitions that were pending at the time the AEDPA became effective.

a criminal defendant's disadvantage do not violate the stringent *Ex Post Facto* prohibition against retroactivity, intervening procedural changes to deportation proceedings which operate to an alien's disadvantage, likewise, should not violate the less restrictive presumption against retroactivity.

### D.

 Finally, Chow contends that section 440(a) is unconstitutional because it violates his right to due process and violates the separation of powers doctrine and Article III of the Constitution. Although Congress maintains plenary power over matters concerning immigration, *Reno v. Flores*, 507 U.S. 292, 305–06, 113 S.Ct. 1439, 1448–49, 123 L.Ed.2d 1 (1993); *Carlson v. Landon*, 342 U.S. 524, 537, 72 S.Ct. 525, 532–33, 96 L.Ed. 547 (1952), permanent resident aliens are entitled to due process in deportation proceedings. *Landon v. Plasencia*, 459 U.S. 21, 33, 103 S.Ct. 321, 329–30, 74 L.Ed.2d 21 (1982); *The Japanese Immigrant Case*, 189 U.S. 86, 100–01, 23 S.Ct. 611, 614–15, 47 L.Ed. 721 (1903); *Batanic v. INS*, 12 F.3d 662, 666 (7th Cir.1993). However, the Supreme Court never has interpreted due process in deportation proceedings to require judicial review of BIA orders, and we have held that aliens have no such due process right. *Yang, Terrazas–Garcia, Katsoulis & Bicanin v. INS*, 109 F.3d 1185, 1196–97 (7th Cir.1997). Thus, to the extent that Chow's petition merely seeks review of the BIA's decision, section 440(a) does not offend his due process rights by foreclosing such review.

However, Chow's petition is slightly different than the aliens' petitions in *Yang*. Unlike those aliens, Chow not only seeks review of the BIA's decision, but also contends that the BIA's proceedings violated his due process rights. While the Supreme Court has recognized that Congress may exercise its power over deportation and exclusion "with such opportunity for judicial review of their action as Congress may see fit to authorize or permit," it has also recognized that such plenary power is subject to judicial intervention under the "paramount law of the Constitution." *Carlson*, 342 U.S. at 537, 72 S.Ct. at 533.

Therefore, if section 440(a) were to preclude all avenues of judicial review available to a permanent resident alien such as Chow, we would be faced with the difficult task of determining to what extent Congress may limit the jurisdiction of the lower federal courts to hear constitutional claims.

However, in past cases, the INS has conceded that section 440(a) has not eliminated all forms of judicial review available to aliens such as Chow, *see, e.g., Kolster v. INS*, 101 F.3d 785, 790 (1st Cir.1996) ("[T]he INS has agreed that, although AEDPA has repealed the previous statutory authorization for habeas review of final deportation orders contained in section 106(a)(10) of the INA, any habeas review required by the Constitution remains available."), and other circuits considering the constitutionality of section 440(a) have noted that the INA still provides some forms of habeas relief. *Hincapie–Nieto v. INS*, 92 F.3d 27, 31 (2d Cir.1996) (citing 8 U.S.C. § 1252(a)(1) as authorizing habeas corpus proceedings for review of detention pending determination of deportability and 8 U.S.C. § 1252(c) as authorizing habeas corpus review of custody of alien subject to final order of deportation); *see also Salazar–Haro v. INS*, 95 F.3d 309, 311 (3d Cir.1996).

Moreover, the wording of section 440(a), when compared to the wording employed in other sections of the AEDPA, does not evidence Congressional intent to preclude all forms of judicial relief. Section 440(a) does state that the prescribed final orders of deportation "shall not be subject to review by any court." However, elsewhere in the AEDPA Congress has used more definite language to express its intent to preclude all forms of judicial review and relief. For example, Congress clearly expressed its intent to preclude judicial review of any type of claim relating to a decision issued under section 235(b)(1) of the INA, which allows an immigration officer to exclude without a hearing certain aliens seeking entry if the aliens do not intend to seek asylum. To this end, section 423(a) of the AEDPA amends section 106 of the INA to read:

(e)(1) **Notwithstanding any other provision of law,** and except as provided in this section, **no court shall have jurisdiction**

to review any individual determination, or **to entertain any other cause or claim, arising from or relating to the implementation or operation of section 235(b)(1).** Regardless of the nature of the action or claim, or the party or parties bringing the claim, **no court shall have jurisdiction or authority to enter declaratory, injunctive, or other equitable relief not specifically authorized in this subsection nor to certify a class under Rule 23 of the Federal Rules of Civil Procedure.**

§ 423(a), 110 Stat. at 1272 (emphasis added). Because section 440(a) does not include this type of sweeping prohibition on judicial review of deportation orders, we will not read section 440(a) as foreclosing all avenues of judicial review. *See Felker v. Turpin,* — U.S. ——, ——————, 116 S.Ct. 2333, 2338–39, 135 L.Ed.2d 827 (1996) (declining to find implied repeal of Supreme Court habeas jurisdiction where other sections of the AEDPA expressly amended appellate court habeas jurisdiction). Because other avenues of judicial review remain open to permanent resident aliens and because the Constitution does not guarantee direct judicial review of deportation orders, we hold that section 440(a) does not offend due process. *See Kolster,* 101 F.3d at 791; *Duldulao v. INS,* 90 F.3d 396, 400 (9th Cir.1996).

We recognize that in *Yang* we expressed reluctance to place much weight on the availability of habeas relief in assessing the petitioners' due process claims. However, in *Yang* we found that the elimination of statutorily provided for direct judicial review effectively foreclosed review of those aliens' claims because claims for review of discretionary decisions by administrative agencies were not viable under the various forms of habeas relief available to the petitioners. *Yang,* 109 F.3d at 1194–96. Chow, on the other hand, does not seek review of the agency decision only. Rather, as stated above, Chow also claims that the agency proceedings violated his due process rights.

Habeas review of Chow's underlying due process claim, therefore, is not as clearly foreclosed as petitioners' claims in *Yang.* Thus, we cannot say that section 106(a) of the INA is Chow's only avenue of judicial review, and because other avenues for relief remain open, we hold that section 440(a) does not violate Chow's due process rights.

■ Even though alternative avenues of judicial relief exist, Chow apparently contends that we should retain jurisdiction over his present petition despite section 440(a) because he has invoked "judicial intervention under the paramount law of the Constitution." However, that Congress's power to grant or restrict judicial review in deportation proceedings is subject to judicial intervention under the Constitution does not imply necessarily that a federal court of appeals such as this one may retain jurisdiction over a petition raising constitutional claims. This court is a court created by statute, and courts created by statute have no jurisdiction other than that which has been conferred upon them by statute. *Sheldon v. Sill,* 49 U.S.(8 How.) 441, 449, 12 L.Ed. 1147 (1850). Therefore, we must have some statutory basis upon which to retain jurisdiction regardless of the character of Chow's claims. Chow clearly petitioned this court pursuant to our jurisdiction under section 106(a) of the INA. However, that basis for jurisdiction no longer exists. We know of no other statutory provision which grants federal courts of appeals jurisdiction to hear due process challenges to deportation proceedings in the first instance, and Chow's petition would not properly invoke any such jurisdiction if it existed.[5] Therefore, we have no jurisdiction to hear Chow's claims in the context he has raised them. Whether Chow may seek a writ of habeas corpus in the district court pursuant to 28 U.S.C. § 2241 or a writ pursuant to 28 U.S.C. § 1651 or an Art. I, § 9, cl. 2 writ in the Supreme Court or whether some other jurisdictional basis for reviewing a constitu-

---

5. For example, a court of appeals has no jurisdiction to grant an original writ of habeas corpus. *Posey v. Dowd,* 134 F.2d 613 (7th Cir.1943). Additionally, although a circuit judge may transfer any application for a writ of habeas corpus made to him to the appropriate district court, Chow's petition clearly does not meet the requirements for such an application. 28 U.S.C. § 2242 (1996).

tional challenge to a deportation order exists is an issue we need not decide here.[6]

Finally, section 440(a) does not violate Article III of the Constitution or the separation of powers doctrine. Article III enumerates cases over which the judicial power shall extend. However, Article III also grants Congress the power to "ordain and establish" such lower federal courts as it sees fit and, thus, permits Congress to define the jurisdiction of the lower federal courts. *Keene Corp. v. United States,* 508 U.S. 200, 207, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993); *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 57–60, 102 S.Ct. 2858, 2864–66, 73 L.Ed.2d 598 (1982). Because the Constitution does not prescribe how much of the judicial power must vest in the lower federal courts, but rather, leaves that decision to Congressional discretion, a statute which prescribes the limits of the courts' jurisdiction is not unconstitutional unless it confers powers not enumerated therein. *Sheldon,* 49 U.S.(8 How.) at 449. As we recognized in *Yang,* 109 F.3d at 1197, section 440(a) merely defines the appellate courts' jurisdiction by committing a set of decisions solely to agency discretion. Thus, section 440(a) does not offend Article III or the separation of powers doctrine.

### III.

Having determined that section 440(a) withstands constitutional scrutiny and does not attach new rights or liabilities to existing actions, we must apply it to Chow's petition. Accordingly, we no longer have jurisdiction to hear Chow's claims, and his consolidated petition for review must be and is

Dismissed.

---

**6.** Even if we believed that we could exercise jurisdiction under the "paramount law of the Constitution" if a petition raised constitutional claims, we doubt that Chow's petition would merit such intervention. Although we express no opinion on the merits of any due process claim Chow may have, we note that Chow alludes to his due process claim in the list of issues presented in his opening brief; however, Chow never analyzes his due process claim, nor does he provide legal support for his contention that he had a due process right to reconsideration of his application for 212(c) relief or a due process right to have his deportation proceedings reopened. Therefore, those issues most likely would not be properly before us even if we had jurisdiction over his petition.