# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 02-4264

ROBERT BRONISZ,

*Petitioner,*

*v.*

JOHN D. ASHCROFT,
United States Attorney General,

*Respondent.*

_____

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A29-646-906

_____

ARGUED MAY 19, 2004—DECIDED AUGUST 5, 2004

_____

Before CUDAHY, RIPPLE and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Robert Bronisz, a native and citizen of Poland, seeks review of an order of the Board of Immigration Appeals ("BIA") denying him suspension of deportation and voluntary departure. For the reasons set forth in the following opinion, we dismiss Mr. Bronisz's petition for lack of jurisdiction.

# I
# BACKGROUND

## A. Asylum Proceedings

Mr. Bronisz arrived as a visitor to the United States in September 1989. After he overstayed his visa, the Immigration and Naturalization Service ("INS") initiated deportation proceedings against him in February 1990. Mr. Bronisz conceded deportability but applied for political asylum; an immigration judge ("IJ") rejected his claim but allowed him to depart voluntarily. Mr. Bronisz appealed this decision to the BIA, which dismissed his appeal in October 1991 after he failed to submit a brief. Mr. Bronisz did not leave the country but instead remained and started a marble and granite installation company in Chicago, Illinois.

## B. NACARA Proceedings

In 1998, Mr. Bronisz filed a motion to reopen his case in order to apply for suspension of deportation pursuant to the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. 105-100, 111 Stat. 2193 (1998). Before enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. 104-208, 110 Stat. 3009-575, an alien could apply for suspension of deportation if he or she could show seven years of continuous presence in the United States, good moral character during that period, and extreme hardship to either the alien or to his or her spouse, parent, or child if removed. Immigration and Nationality Act ("INA") § 244, *codified at* 8 U.S.C. § 1254(a) (1994) (repealed). IIRIRA replaced suspension of deportation with the more stringent cancellation of removal, IIRIRA § 304(a), 110 Stat. at 3009-594, *codified at* 8 U.S.C.

§ 1229b(b) (2004), and instituted the "stop-time" rule, which terminates the period of continuous presence upon the service of a notice to appear or order to show cause, *id.*, 110 Stat. at 3009-595, *codified at* 8 U.S.C. § 1229b(d) (2004).

Two years later, NACARA amended IIRIRA by exempting certain aliens, including those of Polish origin, from the application of the stop-time rule. *See* NACARA § 203(a), 111 Stat. at 2196-97 (amending IIRIRA § 309(c)(5)(C)(i), 110 Stat. at 3009-627). By virtue of this exemption, certain aliens who were placed in deportation proceedings before April 1, 1997, became eligible for suspension of deportation, *id.*, while others placed in removal proceedings on or after April 1, 1997, became eligible for cancellation of removal, *id.* § 203(b), 111 Stat. at 2198-99 (amending IIRIRA § 309(f)(1), 110 Stat. 3009-627). *See* 143 Cong. Rec. 25,544 (1997). For those aliens, like Mr. Bronisz, whose proceedings already had terminated, NACARA also allowed them to file one motion to reopen to apply for relief. NACARA § 203(c), 111 Stat. at 2199 (amending IIRIRA § 309(g), 110 Stat. 3009-627); *see* 8 C.F.R. § 3.43(b) (2002); 143 Cong. Rec. 25,544 (1997). The INS did not oppose Mr. Bronisz's motion to reopen his deportation proceedings, the motion was granted, and a hearing was held in August 2000.

Before the IJ, Mr. Bronisz argued that, if removed, he would suffer extreme hardship because he had lived in the United States for a substantial portion of his life and owned property and a business here. He said that he feared losing much of his investment in both his business and real estate holdings and stressed that his company generates substantial revenues and employs almost a dozen persons who could lose their jobs if he is forced to sell. Mr. Bronisz acknowledged that his mother, father and older brother still live in Poland but suggested that finding work there would be difficult because he has no transferable employment skills.

In an oral decision, the IJ found that, although Mr. Bronisz met the seven-year and good moral character requirements for suspension of deportation, he had not demonstrated that he would suffer extreme hardship if removed. The IJ reasoned that, even if Mr. Bronisz is forced to sell his property and business, his considerable assets "should be able to facilitate his transition to life in Poland." R.37. The IJ denied him suspension of deportation, as well as voluntary departure because of his earlier failure to depart and ordered him deported to Poland pursuant to the charge in his original 1990 order to show cause. In November 2002, the BIA summarily affirmed, *see* 8 C.F.R. § 3.1(e)(4); Mr. Bronisz now petitions this court for review.

## II

## DISCUSSION

Mr. Bronisz challenges the IJ's conclusion that he did not establish extreme hardship. He argues that his removal would have a "devastating effect . . . on his employees and on the community" because he has invested heavily in both through his business. Petitioner's Br. at 8. He contends that the IJ failed to consider his particular circumstances in light of what he describes as NACARA's "ameliorating" purpose. *Id.* at 9. Mr. Bronisz also challenges the IJ's decision not to grant him voluntary departure.

The Government contends that we lack jurisdiction to review the IJ's decision. According to the Government, Mr. Bronisz is subject to IIRIRA § 309(c)(4)(E), which limits judicial review of certain discretionary decisions under the INA. *See* IIRIRA § 309(c)(4)(E), 110 Stat. 3009-626. Because the decision whether to grant suspension of deportation or voluntary departure is discretionary, the Government argues, we lack jurisdiction over Mr. Bronisz's petition for review.

## A. IIRIRA and Judicial Review

Although the permanent provisions of IIRIRA did not take effect until April 1, 1997, IIRIRA nonetheless sets out certain rules that apply to proceedings commenced before that date. *See* IIRIRA § 309(a), 110 Stat. at 3009-625.[1] In other words, with few exceptions, aliens whose deportation proceedings commenced before April 1, 1997, continue to be governed by the law as it stood before IIRIRA's passage. *See id.* One of these exceptions, IIRIRA § 309(c)(4), applies to a case commenced before April 1, 1997, and "in which a final order of exclusion or deportation is entered more than 30 days after the date of enactment of this Act [September 30, 1996]."[2] *Id.* § 309(c)(4), 110 Stat. at 3009-626. For aliens who

---

[1] IIRIRA § 309(a) reads in relevant part:

(a) In General.—Except as provided in this section and sections 303(b)(2), 306(c), 308(d)(2)(D), or 308(d)(5) of this subdivision, this subtitle and the amendments made by this subtitle shall take effect on the first day of the first month beginning more than 180 days after the date of the enactment of this Act (in this title referred to as the "title III-A effective date").

IIRIRA § 309(a), 110 Stat. 3009-625.

[2] IIRIRA § 309(c)(4) reads in relevant part:

(c) Transition for Certain Aliens.—

. . .

(4) Transitional Changes in Judicial Review.—In the case in which a final order of exclusion or deportation is entered more than 30 days after the date of the enactment of this Act [Sept. 30, 1996], notwithstanding any provision of section 106 of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act) to the contrary—

. . .

(continued...)

have a final order of deportation entered against them after October 30, 1996, § 309(c)(4) dictates that "there shall be no appeal of any discretionary decision under section 212(c), 212(h), 212(i), 244, or 245 of the Immigration and Nationality Act (as in effect as of the date of enactment of this Act)." *Id.* § 309(c)(4)(E), 110 Stat. at 3009-626. Mr. Bronisz does not contest that his applications for suspension of deportation and voluntary departure were requests for relief under the old (pre-IIRIRA) § 244 of the INA.[3] *See Useinovic v. INS*, 313 F.3d 1025, 1033-35 (7th Cir. 2001) (discussing relationship between NACARA and INA § 244); *see also Tamas-Mercea v. Reno*, 222 F.3d 417, 427 (7th Cir. 2000) (considering voluntary departure); *Pilch v. INS*, 129 F.3d 969, 970-71 (7th Cir. 1997) (discussing suspension of deportation). Therefore, if the November 2002 order is a "final order of exclusion or deportation entered more than 30 days after" September 30, 1996, in a case commenced before April 1, 1997, we lack jurisdiction over Mr. Bronisz's petition for review. *See* IIRIRA § 309(c)(4), 110 Stat. at 3009-626.

In this case, the IJ ordered Mr. Bronisz deported pursuant to the original charge in his order to show cause. The parties do not dispute, and we agree, that this is a "final order of

---

[2] (...continued)
> (E) there shall be no appeal of any discretionary decision under section 212(c), 212(h), 212(i), 244, or 245 of the Immigration and Nationality Act (as in effect as of the date of enactment of this Act).

IIRIRA § 309(4), 110 Stat. 3009-625 (as amended by 110 Stat. 3657).

[3] We are puzzled that Mr. Bronisz applied for voluntary departure after his proceedings were reopened. NACARA allows aliens to reopen proceedings to apply for suspension of deportation, not voluntary departure. *See* NACARA § 203(c), 111 Stat. at 2199 (amending IIRIRA § 309(g), 110 Stat. at 3009-627).

deportation." *See* 8 U.S.C. § 1101(a)(47)(A) & (B) ("The term 'order of deportation' means the order . . . concluding that the alien is deportable or ordering deportation."). What remains to be seen is whether the November 2002 order is an order entered in a case that commenced before April 1, 1997.

## B. Motion to Reopen

There is some disagreement among the circuits as to whether the filing of a motion to reopen is itself part of the underlying immigration proceedings or more appropriately characterized as the commencement of a new proceeding altogether. *Compare Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1290 n.2 (10th Cir. 2001) (stating that a motion to reopen is part of earlier proceedings); *Stewart v. INS*, 181 F.3d 587, 593 (4th Cir. 1999) (same); *Vargas v. INS*, 938 F.2d 358, 362 (2d Cir. 1991) ("A motion to reopen or to reconsider is not a request for a new decision."), *with Anin v. Reno*, 188 F.3d 1273, 1275 n.2 (11th Cir. 1999) (noting circuit split but declining to adopt position), *and Wright v. Ouellette*, 171 F.3d 8, 12 (1st Cir. 1999) (new proceeding). The First Circuit alone has held that the filing of a "motion to reopen is more akin to starting a new proceeding." *Wright*, 171 F.3d at 12. We never have acknowledged explicitly and rejected the view of the First Circuit; however, we have implicitly sided with the majority of circuits. We have observed that the filing of a motion to reopen is part of the earlier immigration proceedings. *See Nwaokolo v. INS*, 314 F.3d 303, 306 (7th Cir. 2002) (per curiam) ("[The petitioner's] motion to reopen is part and parcel of her deportation proceedings."); *Henry v. INS*, 8 F.3d 426, 438 (7th Cir. 1993) ("We therefore agree . . . that a motion to reopen merely revives the earlier [proceedings] and does not constitute an entirely new request for discretionary relief.").

It does not necessarily follow, however, that the proceedings resulting from a successful motion to reopen are part of the earlier immigration proceedings. Although we have found no case that speaks explicitly on this issue, we believe some guidance can be gleaned from the manner in which courts have treated motions to reopen. The Supreme Court has analogized motions to reopen to motions in civil cases made under Federal Rule of Civil Procedure 60(b). *See Stone v. INS*, 514 U.S. 386, 405 (1995); s*ee also Henry*, 8 F.3d at 438 ("[Motions to reopen] are thus not unlike those under Fed. R. Civ. P. 60(b), in which parties seek relief from a final judgment to present newly discovered evidence."); *White v. INS*, 6 F.3d 1312, 1315 (8th Cir. 1993) (motions to reopen or reconsider "are more analogous to motions for relief from judgment for mistake or for newly discovered evidence made pursuant to Federal Rule of Civil Procedure 60(b)"). Already we have carried the 60(b) analogy, albeit implicitly, to the denial of a motion to reopen. Just as the denial of a Rule 60(b) motion is a final appealable order, *see SEC v. Van Waeyenberghe*, 284 F.3d 812, 814 (7th Cir. 2002) (per curiam), we have held that the denial of a motion to reopen is a final order independently subject to review like any other final order of deportation or removal, *see Chow v. INS*, 113 F.3d 659, 663-64 (7th Cir. 1997), *abrogated on other grounds by LaGuerre v. Reno*, 164 F.3d 1035 (7th Cir. 1998).[4] Thus, had the IJ denied Mr. Bronisz's motion to reopen, that decision,

---

[4]  Judicial review of such an order assumes that the immigration laws provide for subject matter jurisdiction. Many courts, including our own, have observed that, when Congress limits the jurisdiction to review final orders of deportation or removal, it also limits the jurisdiction to review denials of motions to reopen or reconsider. *See Dave v. Ashcroft*, 363 F.3d 649, 652 (7th Cir. 2004); *Stewart v. INS*, 181 F.3d 587, 593 (4th Cir. 1999); *Sarmadi v. INS*, 121 F.3d 1319, 1321-22 (9th Cir. 1997).

once final, would be a "final order of deportation" within the meaning of § 309(c)(4).

We see no reason, then, to discontinue the 60(b) analogy in examining the proceedings that follow the grant of a motion to reopen. When a district court grants a Rule 60(b) motion, the effect is to vacate the previous judgment in the case. *See* Fed. R. Civ. P. 60(b); *Boyko v. Anderson*, 185 F.3d 672, 673-74 (7th Cir. 1999). Consequently, the previously filed case is reinstated and goes forward from that point. *See McCormick v. City of Chicago*, 230 F.3d 319, 326-27 (7th Cir. 2000) (treating motion to reinstate case as motion under Rule 60(b)); *see also Rodriguez v. Mitchell*, 252 F.3d 191, 198 (2d Cir. 2001) (noting that the grant of a Rule 60(b) motion in habeas corpus case "would merely reinstate the previously dismissed petition for habeas [corpus], opening the way for further proceedings"); *see also* 12 James Wm. Moore, et al., *Moore's Federal Practice* § 60.61 at 60-194 (3d ed. 2004) ("A Rule 60(b) motion is considered a continuation of the original proceeding."). We think that the same result obtains when a motion to reopen is granted in the immigration context. *See Fedorca v. Perryman*, 197 F.3d 236, 241 (7th Cir. 1999) ("If Fedorca's motion to reopen his deportation proceedings had been successful, as it initially was, it would have abrogated the 1995 deportation order."). Indeed, the Ninth Circuit already has adopted this approach. *See Lopez-Ruiz v. Ashcroft*, 298 F.3d 886, 887 (9th Cir. 2002) ("The BIA's granting of the motion to reopen means there is no longer a final decision to review."). We therefore make explicit what we stated in dicta in *Fedorca* and hold that the grant of a motion to reopen vacates the previous order of deportation or removal and reinstates the previously terminated immigration proceedings.

With that in mind, we return to the question posed earlier—whether the order entered against Mr. Bronisz in

November 2002 is a final order of deportation entered after October 30, 1996, in a case commenced before April 1, 1997. We agree with the Government that it is. In November 2002, the BIA affirmed the IJ's decision denying Mr. Bronisz suspension of deportation and voluntary departure, and ordering him deported pursuant to the order to show cause served on him in 1990. Thus, Mr. Bronisz is subject to a final order of deportation entered after October 30, 1996. And, as we have just explained, this order was entered in a case commenced before April 1, 1997, because Mr. Bronisz's applications for discretionary relief—submitted after his successful motion to reopen—were part of his original immigration proceedings. The grant of his motion to reopen allowed the original proceedings to go forward as if there never had been an order of deportation entered in October 1991. Thus, we cannot pretend, as Mr. Bronisz proposes we should, that the grant of the motion to reopen placed him back in proceedings that ended with the October 1991 order. That order was effectively vacated by his successful motion to reopen. Therefore, because Mr. Bronisz's November 2002 order is a final order of deportation entered after October 30, 1996, in a case commenced before April 1, 1997, and concerns discretionary relief under INA § 244, IIRIRA § 309(c)(4)(E) operates to bar our review.

## Conclusion

For the foregoing reasons, the petition for review is dismissed for lack of jurisdiction.

DISMISSED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*