In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 14-3456 & 15-1378

SHMAEL ISAAC TURKHAN,

*Petitioner,*

*v.*

LORETTA E. LYNCH, Attorney General of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals
No. A035-422-486.

ARGUED APRIL 5, 2016 — DECIDED SEPTEMBER 9, 2016

Before WOOD, *Chief Judge*, and BAUER and WILLIAMS, *Circuit Judges*.

WOOD, *Chief Judge*. Bureaucracy's "specific nature," Max Weber said, "develops the more perfectly the more [it] is 'dehumanized,' the more completely it succeeds in eliminating from official business love, hatred, and all purely personal, irrational and emotional elements which escape calculation." Max Weber, *Bureaucracy*, in FROM MAX WEBER: ESSAYS IN SOCIOLOGY 196, 215–16 (H.H. Gerth

& C. Wright Mills eds. & trans., 1991). By this standard, the government's treatment of this case has achieved perfection.

In 1979, Shmael Isaac Turkhan, an Assyrian Christian and citizen of Iraq, immigrated to the United States as a lawful permanent resident. He was convicted of conspiracy to distribute cocaine in 1990 but has had no trouble with the law since then. Twenty-six years later, the Department of Homeland Security, Javert-like, is still trying to deport him to Iraq. The Board of Immigration Appeals affirmed the immigration judge's decision to defer his removal under the U.N. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), implemented at 8 C.F.R. §§ 208.16, 208.17. It refused, however, to reopen the immigration judge's order for Turkhan's removal. This means that he can be removed whenever the conditions for CAT deferral abate.

Turkhan argues that the Board and the immigration judge erred in declining to reopen the decision requiring his removal for two reasons: first, he says, it was wrong for the Board to read its own order as a limited remand for consideration of relief under the CAT rather than as a reopening of the entire proceeding under section 212(c) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(c) (1994); and second, the Board should have found that Turkhan's constitutional right to procedural due process was violated at his original section 212(c) hearing. While we are mystified by the government's decision to contest this matter, the decision is not ours to make, and we must therefore deny Turkhan's petition for review.

**I**

Turkhan was born in 1960, in Kirkuk, Iraq. On January 29, 1979, at age 19, he arrived in New York. His entry was lawful, and he eventually became a legal permanent resident. He was—and is—a practicing Assyrian Christian and has not left the United States since he entered in 1979. He is married to a U.S. citizen, is the father of two U.S. citizen children, ages 10 and 19, and is the stepfather of his wife's other two children, whom he helped to raise.

For his first 11 years in the United States, Turkhan lived uneventfully in Chicago, Illinois (where he still resides). But on April 17, 1990, he pleaded guilty to conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846. He was sentenced to 47 months' imprisonment. By all accounts, he was a model prisoner: he obtained his G.E.D., completed a 166-hour course for nursing assistants, was awarded a certificate for finishing another course for nursing assistants and mental-health companions, and graduated from the Adult Basic Education Course. He also worked as a mental-health companion while in federal custody. A letter of commendation written by a supervisor noted that "his language abilities ha[d] proved invaluable to the correctional and medical staff in our mission to provide safe, humane and professional psychiatric services to our patients"; that he was "a positive role model for the patients and for the other inmates in our institution"; and that he "balance[d] his role as a patient advocate and compassionate Mental Health worker with [*sic*] the confines of his status as an inmate with great finesse and maturity."

At the conclusion of his prison term, Turkhan was placed in deportation proceedings. On October 3, 1994, an

immigration judge found him deportable based on his conviction of an aggravated felony. Turkhan turned for relief to section 212(c) of the INA, which at the time allowed the Attorney General to waive deportation for certain otherwise excludable legal permanent residents. See 8 U.S.C. § 1182(c) (1994); *INS v. St. Cyr*, 533 U.S. 289, 294 (2001) (noting that the Board has interpreted section 212(c) to allow for waiver of deportation). (Section 212(c) was later repealed by § 304(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, (IIRIRA) Pub. L. No. 104-208, Div. C, 110 Stat. 3009, 3009–597, and replaced with a narrower waiver for which Turkhan is not eligible. See 8 U.S.C. § 1229b(a)(3) (waiver available only to permanent residents not convicted of aggravated felony)).

At the hearing, Turkhan attempted to have his mother and sister testify on his behalf. They do not speak English, however, and although arrangements were supposed to have been made for an interpreter, one was not provided. According to the testimony of Gerardo Gutierrez, Turkhan's attorney, Gutierrez was supposed to renew Turkhan's request for an interpreter 30 days before the hearing but he forgot to do so. As a result, Turkhan was unable to present the testimony of his mother and sister. The immigration judge reviewed only their "somewhat boiler plate" affidavits, to which he gave almost no weight because they did not testify. The immigration judge found Turkhan statutorily eligible for relief under section 212(c), but denied it as a matter of discretion. The Board affirmed.

From there, Turkhan's case meandered along a long and winding road. In May 1997, the Board denied Turkhan's motions to reconsider and reopen his case, finding

that, as an aggravated felon, he was statutorily ineligible for section 212(c) relief under changes to the INA made by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-208, Div. C, 110 Stat. 2009, and IIRIRA. Later that year, we ruled that AEDPA and IIRIRA deprived us of jurisdiction to review the Board's decisions in Turkhan's case. See *Turkhan v. INS*, 123 F.3d 487 (7th Cir. 1997), *abrogated by LaGuerre v. Reno*, 164 F.3d 1035 (7th Cir. 1998). In 1999, we held that we had jurisdiction to consider Turkhan's petition for a writ of habeas corpus, but affirmed the district court's denial of the writ and held that Turkhan was ineligible for a section 212(c) waiver. See *Turkhan v. Perryman*, 188 F.3d 814 (7th Cir. 1999).

In January 2001, the Department of Justice issued new regulations providing for the reopening of certain section 212 cases. See 8 C.F.R. §§ 3.44, 212.3 (2001). Turkhan filed another motion to reopen. While that motion was pending, the Supreme Court handed down *INS v. St. Cyr*, 533 U.S. 289 (2001), which held that persons rendered removable by guilty pleas entered prior to AEDPA's enactment may still obtain relief under section 212(c). The Board nevertheless denied Turkhan's motion and his motion to reconsider.

The Department issued additional regulations in 2004. See 8 C.F.R. § 1003.44 (2004). Turkhan filed another motion to reopen, which was denied, as was its reconsideration. In 2006, he filed a new motion to reopen, seeking withholding of removal under the CAT and reasserting his eligibility for section 212(c) relief. The Board denied the motion. Turkhan filed a motion for reconsideration, along with a petition for review.

On February 27, 2007, somewhat surprisingly, the Board ordered Turkhan's proceedings reopened. It explained that "[i]n light of [*Youkhana v. Gonzales*, 460 F.3d 927 (7th Cir. 2006)]," it would "grant the motion to reconsider *sua sponte*, vacate [its] June 12, 20[0]6 decision and remand the record so that the Immigration Judge may consider the respondent's claims based on changed country conditions in Iraq." In 2009, an immigration judge ruled that, despite limiting language in the Board's remand order, Turkhan could apply for any form of relief.

Shortly thereafter, the immigration judge administering Turkhan's case retired and a new judge took over the case. The new judge took a fresh look at the matter and held that the Board's order did *not* reopen Turkhan's application for section 212(c) relief. In 2012, that judge issued an oral decision finding Turkhan ineligible to seek section 212(c) relief but granting deferral of removal under the CAT. The Board affirmed. Turkhan then filed a motion to reconsider, in which he contended that the Board had reopened both his CAT claim and his section 212(c) application. Both the immigration judge and the Board disagreed with that view. In affirming the immigration judge's decision, the Board noted:

> The subsequent decision of the Board granting the respondent's motion based on changed country conditions did not restore the respondent to his prior lawful permanent resident status, because such an order is merely an interlocutory measure allowing for a hearing on a new issue that has arisen; it does not abrogate the existing deportation

order or confer lawful immigration status on
the movant.

Turkhan moved for reconsideration, which the Board denied. Turkhan petitioned for review of both decisions. We consolidated his petitions, and now address them.

## II

Where, as it did in this case, the Board "affirms the [immigration judge's] decision and supplements with its own explanation for denying the appeal, we review the [immigration judge's] decision as supplemented by the [Board's] reasoning." *Champion v. Holder*, 626 F.3d 952, 956 (7th Cir. 2010). In doing so, we review factual and credibility determinations to ensure that they are supported by substantial evidence; we evaluate legal conclusions *de novo*. *Lishou Wang v. Lynch*, 804 F.3d 855, 858 (7th Cir. 2015) (internal citations omitted). Because the criminal-alien review bar applies, this Court has jurisdiction to review only constitutional claims and questions of law. See 8 U.S.C. § 1252(a)(2)(C), (D).

## A

Turkhan urges that there is no such thing as a partial reopening and that the Board therefore committed legal error when it purported to take such an action. There is no basis for his contention. To the contrary, we have held that the Board's decision that an individual is removable is still "final" when it is remanded for a background check to ensure eligibility for withholding of deportation. See *Viracacha v. Mukasey*, 518 F.3d 511, 513 (7th Cir. 2008) (noting that

a "final order of removal" is an "order of the agency 'concluding that the alien is deportable or ordering deportation'" (quoting 8 U.S.C. § 1101(a)(47)(A)).

The same logic applies here. An "order withholding removal"—of which an order based on the CAT is one—"supposes that the alien is 'removable.'" *Id*. at 514 (citing *Guevara v. Gonzales*, 472 F.3d 972, 976 (7th Cir. 2007)). The Board has long held that when an order reopening proceedings is granted because "a new question has arisen that requires a hearing," that order "is an interlocutory order allowing for such a hearing and does not dispose of the merits of the application for relief from deportation." *In Re M-S-*, 22 I. & N., Dec. 349, 354 (BIA 1998) (internal citations omitted). There is no reason to doubt that the Board may use such a procedure. See generally *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (formal agency interpretations of own regulations are "controlling unless 'plainly erroneous or inconsistent with the regulation'" (citation omitted)). The Board's interpretation of the relevant regulations is entirely reasonable. See 8 C.F.R. §§ 1003.2(c)(3)(ii)(excepting certain applications for withholding of deportation based on changed country conditions from ordinary motion-to-reopen time and numerical limitations), § 1003.23(b)(3)–(4) (same for CAT, differentiating conditions for granting motions to reopen based on relief sought).

Turkhan points to a number of our cases, which he reads as rejecting the Board's reasoning in *In re M-S-*. He is mistaken. True, *Orichitch v. Gonzales* held that "the grant of a motion to reopen vacates the previous order of deportation or removal and reinstates the previously terminated

immigration proceedings." 421 F.3d 595, 598 (7th Cir. 2005) (quoting *Bronisz v. Ashcroft*, 378 F.3d 632, 637 (7th Cir. 2004)). But *Orichitch* involved an order to reopen the immigrant's removal proceedings themselves, not a separate ground for withholding removal. *Id*. at 597. *Bronisz* dealt with the distinct question whether the grant of a motion to reopen is part of the original immigration proceedings, or constitutes the commencement of a new proceeding. See 378 F.3d at 636–37.

The dicta Turkhan cites from *Fedorca v. Perryman* simply contemplates the situation we confronted in *Orichitch*—a motion to reopen the removal proceedings as a whole. 197 F.3d 236, 240 (7th Cir. 1999) ("If Fedorca's motion to reopen his deportation proceedings had been successful … it would have abrogated the 1995 deportation order."). None of these cases says that if the Board wants to remand, it faces an "all or nothing" choice.

Turkhan also asserts that the "Department of Homeland Security agreed that [he] was a permanent resident after the 2007 reopening and remand by issuing him a new permanent resident card in 2014." But that is misleading. About seven months after he received that card, U.S. Citizenship and Immigration Services notified him that he had received it in error and that his status had not changed. Turkhan's argument on this point is not clear, but to the extent he is arguing estoppel, he does not come close to meeting its elements. See *United States v. Anaya-Aguirre*, 704 F.3d 514, 520 (7th Cir. 2013) ("When a party seeks to estop the government, the party must also show that the government committed affirmative misconduct, which requires 'more than mere negligence.'" (citation omitted)).

Turkhan repeatedly refers to *St. Cyr* and the fact that he is eligible for section 212(c) relief. But eligibility is not the problem. The issue is whether the Board must exercise its discretion to reopen his section 212(c) application, even though it is number-barred. Having lived within the law for the 11 years before and the 26 years since his conviction, Turkhan would be a prime candidate for that discretion if it were exercised. But the government has elected to oppose reopening, and there is no legal basis for forcing the Board to take this step.

Finally, Turkhan contends that because the Board did not consider *Orichitch*, it erred in denying his motion to reconsider. "While the BIA need not 'write an exegesis on every contention,' its opinion must reflect that 'it has heard and thought and not merely reacted.'" *Akinyemi v. INS*, 969 F.2d 285, 289 (7th Cir. 1992) (quoting *Becerra–Jimenez v. INS*, 829 F.2d 996, 1000 (10th Cir. 1987)). The Board laid out its reasoning in its October 16, 2014 order. Turkhan repeated arguments he has made before, but he did not identify any error of law or fact, or any argument that the Board overlooked. We find no legal error in the Board's denial of Turkhan's motion to reconsider.

B

Turkhan also contends that the conduct of his section 212(c) proceedings violated the procedural due process rights guaranteed to him by the Fifth Amendment to the U.S. Constitution. This argument hits a stumbling block straight out of the gate: non-citizens "have a Fifth Amendment right to due process in some immigration proceedings, but not in those that are discretionary." *Champion*, 626 F.3d at 957. The section 212(c) waiver was a discretionary

benefit and is therefore governed by this rule. See *Bakarian v. Mukasey*, 541 F.3d 775, 784 (7th Cir. 2008). Because Turkhan's section 212(c) proceeding did not adjudicate a right protected by procedural due process, the hearing by definition did not violate due process requirements.

All this said, Turkhan's experience is troubling. As the immigration judge who granted Turkhan relief under CAT and denied it under section 212(c) noted, Turkhan's is "an unusual case." It has been pending for roughly 23 years. The immigration judge opined that "[t]he record clearly shows that [Turkhan] ha[s] been rehabilitated for the offense [he] … committed" 26 years ago. Turkhan has no family in Iraq. To the contrary, all his family is here, and lawfully so. "Family unity" is "one of the principal goals of the [U.S. immigration] statutory and regulatory apparatus." *Fornalik v. Perryman*, 223 F.3d 523, 525 (7th Cir. 2000). Finally, Turkhan is 56 years old; he has not set foot in Iraq since he left that country more than 37 years ago, at the age of 19.

The government has continued to pursue this case vigorously despite the fact that, several years ago, it announced a policy of not seeking mandatory punishment against certain low-level, nonviolent drug offenders such as Turkhan. See Memorandum from Attorney General Eric Holder to the United States Attorneys and Assistant Attorney for the Criminal Division (Aug. 12, 2013). Perhaps if the Department allows Turkhan another chance to apply for discretionary relief, things might turn out differently. Perhaps, unlike 23 years ago, Turkhan's lawyer might not inadvertently fail to secure an interpreter, and Turkhan's sister and mother will be able to testify on his

behalf. Perhaps the immigration judge, who gave the "boiler plate" affidavits of these witnesses little weight, will find their testimony persuasive. Turkhan has also contended that the immigration judge in his section 212(c) decision misinterpreted Turkhan's prison records in finding that a record of his participation in a drug treatment program contradicted (and rendered not credible) his testimony that he never used drugs. But a closer look reveals that there was no such inconsistency. What Turkhan said was that he *worked* in that program; he was not a patient. Perhaps that misunderstanding can be resolved in a new proceeding. Perhaps, after 26 years of law-abiding life in the United States, the executive authorities might see fit to give him a chance to win the right to stay rather than live under a constant risk of being dropped back into a country he has not known since he was a teenager.

### III

Because it provides only for discretionary relief, section 212(c) endows Turkhan with no right protected by procedural due process; as a result, this theory of relief cannot succeed. Neither did the Board or immigration judge err in determining that the Board could—and did—order only a partial remand of Turkhan's case. We therefore DENY his petitions for review.