Anthony Ogugua **UDENZE** and Sharonda Denise Udenze, Petitioners/Plaintiffs,

v.

Arthur E. **STRAPP**, District Director, Immigration and Naturalization Service, and Janet Reno, Attorney General of the United States, Respondents/Defendants.

No. 3:96–CV–3395–T.

United States District Court,
N.D. Texas,
Dallas Division.

July 24, 1997.

Herbert Azubuike Igbanugo, Law Office of Herbert Igbanugo, Minneapolis, MN, for plaintiff.

Paula Mastropieri Billingsley, U.S. Attorney's Office, Dept. of Justice, Dallas, TX, for defendant.

## ORDER OF DISMISSAL

MALONEY, District Judge.

Petitioner Anthony Udenze, a deportable alien, has filed several motions and petitions with the Court asking for review of the decisions of the Immigration and Naturalization Service (INS) and the Board of Immigration Appeals (BIA), and for stay of deportation.[1] Respondents INS and Janet Reno have filed a motion to dismiss for lack of jurisdiction, to which Udenze filed a cross motion for summary judgment. Udenze also seeks a hearing. After consideration, the Court is of the opinion that it lacks jurisdiction to entertain Udenze's action. In the alternative, the Court concludes that Udenze presents neither constitutional error nor abuse of discretion on the part of the INS and BIA in their handling of Udenze's case.

This case has a complicated procedural history which the Court will refer to only as necessary.[2] Udenze, a native of Nigeria, entered the United States on a student visa in 1979. After finishing his education, he remained in this country and eventually married a United States citizen, Demetta Jo Vaughn (Vaughn), on January 3, 1987. That same month, Udenze and his new wife filed a visa petition with INS to accord Udenze immediate relative status. Three to four months later, in April or May, INS granted the visa petition and accorded Udenze conditional permanent resident status.

Udenze and Vaughn settled in Texas. In September of 1987, just nine months after their wedding, Udenze and Vaughn separated. Vaughn moved to California, and the two never lived together again as husband

---

1. Udenze, who designates himself as Plaintiff/Petitioner, filed the following with this Court on December 19, 1996: Petition for Review (Appeal) of the Visa Petition Decisions of the INS District Director and the Board of Immigration Appeals (BIA); Complaint for Declaratory and Injunctive Relief; Motion for Preliminary Injunctive Relief (to Stay Deportation); and Motion for a Stay of Deportation Pending Resolution of Petition.

2. The parties' briefs often give conflicting dates of events, and thus all dates referenced here are approximate.

and wife. This situation continued without incident until Udenze left in December of 1988 to visit his family in Nigeria. While there, Udenze contracted cerebral malaria and was forced to remain in Nigeria until his full recovery in early January of 1989.

### Revocation of First Visa

Upon his return to the United States in January of 1989, Udenze—while still married to but separated from Vaughn—filed a petition with INS to remove his conditional status so that he might be a permanent resident. In September of 1989, INS interviewed Vaughn in connection with the petition to remove conditional status. Vaughn apparently lied on the paperwork about her California residence and about living with Udenze. Upon learning of her fabrications during the interview, INS immediately revoked Udenze's conditional permanent resident status, issued a show cause order of deportability and notice of hearing, and obtained a warrant for his arrest.

The hearing was not held until April 11, 1990. The immigration judge heard both INS's request for revocation of conditional status and Udenze's motion for suspension of deportation. After hearing, the judge found that Udenze had entered into the marriage with Vaughn to evade immigration laws, but stated that he affirmed INS's revocation because Vaughn had lied about her residence on Udenze's 1989 petition for permanent status. The immigration judge also affirmed INS's decision to deport Udenze.

It is unclear what happened next, but apparently Udenze filed for another suspension of deportation, which the same judge heard and issued a decision on over a year later on May 6, 1991. In this second decision, the immigration judge maintained his earlier finding that Udenze was deportable. However, he granted Udenze's suspension of deportation request on the sole ground that Udenze would suffer extreme hardship in returning to Nigeria after deportation because of the risk that he might contract cerebral malaria again, which can be fatal. At some point thereafter, INS appealed the

immigration judge's decision to suspend Udenze's deportation. This appeal was to the BIA.

The BIA did not render a decision on INS's 1991 appeal until September of 1994. In the intervening three years, Udenze met his second wife-to-be (Sharonda Udenze), divorced Vaughn, became a father of two with Sharonda, and finally married Sharonda, a United States citizen, in early 1994. The BIA's opinion, delivered September 21, 1994, sustained INS's appeal of the immigration judge's 1991 finding that Udenze faced a medical hardship and therefore should not be deported. The BIA vacated the immigration judge's suspension of deportation, denied Udenze's request for yet another suspension of deportation, but granted his request for voluntary departure. Thus, as of late September of 1994, Udenze was a deportable alien.

A month later, on October 17, 1994, Udenze filed a petition for review of the BIA's order with the Court of Appeals for the Fifth Circuit. It is at this point that the procedural posture of the case becomes complex, as Udenze subsequently filed several motions and petitions with BIA and INS before the Fifth Circuit could rule on Udenze's first appeal, and he then appealed from those later administrative decisions. Consequently, the Court will examine each proceeding or action—along with any appeals—independently rather than analyzing events in chronological order.

On May 5, 1995, the Fifth Circuit issued its opinion on Udenze's appeal of the BIA's order of September 21, 1994. In the appeal, Udenze sought reversal of the immigration judge's initial determination that the first marriage was a sham. The circuit court held that Udenze had not preserved that issue on appeal because he had not sought review of it with the BIA.[3] Udenze also appealed the BIA's reversal of the immigration judge's finding that forcing Udenze to return to Nigeria would work an extreme hardship on him due to the medical hazard to which he

---

**3.** Udenze's counsel's failure to appeal this issue to the BIA forms the basis of his subsequent claim for ineffective assistance of counsel.

would be exposed. The Fifth Circuit affirmed the BIA's decision to reverse the immigration judge, holding that the BIA neither committed clear error nor abused its discretion in reaching its decision.

■ Udenze has now exhausted his administrative remedies and direct appeals concerning the INS's initial determination that his first marriage was a sham and that he was otherwise deportable at the time the immigration judge held the second hearing in May of 1991. To the extent that Udenze seeks to re-litigate either of these issues in this Court in the instant action, he is barred from doing so as this Court has no jurisdiction to entertain such claims in a collateral attack.

Under the former statutory scheme of 8 U.S.C. § 1105a, the circuit court of appeals had exclusive jurisdiction over review of orders of and relating to deportation. Although the statute has since been repealed and replaced by portions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA),[4] similar procedural mechanisms are in place in the new statutory scheme. Pursuant to 8 U.S.C. § 1252(b) and (d), an alien may seek review of a decision of the INS or BIA only with the circuit court of appeals, which Udenze has already done here.

Further, § 242 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1252(g), as amended by § 306(a) of the IIRIRA, provides:

> (g) Exclusive jurisdiction. Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

Pursuant to § 306(c) of the IIRIRA, this particular amendment "shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act."

Taken together, these amendments preclude the Court from considering Udenze's claims for a stay of deportation and from reviewing the INS's decision—or the BIA's affirmance—that Udenze's marriage was a sham and that he was thus deportable. The Court therefore, lacks jurisdiction to hear Udenze's collateral appeal of these two issues and grants Respondents' motion to dismiss them.

■ To the extent that Udenze is seeking *habeas corpus* review in the instant action for constitutional violations committed by the INS, the immigration judge, or the BIA in determining his status as a deportable alien or that his first marriage was a sham, the Court concludes that the provisions of 8 U.S.C. § 1252 also preclude *habeas* review. Even assuming the Court has jurisdiction to entertain Udenze's petition for writ of *habeas*, the Court discovered nothing in the record which could support such claims. Consequently, the Court denies with prejudice Udenze's writ of *habeas corpus* as to the issues of whether his first marriage was a sham or whether he was deportable as of May of 1991.

### First Motion to the BIA to Reopen and Remand

Either in conjunction with the filing of his first appeal to the Fifth Circuit in October of 1994 or in February of 1995,[5] Udenze filed a motion with the BIA to reopen his case and remand to the INS for an adjustment of his status based on ineffective assistance of counsel at the initial hearing before the immigration judge in April of 1990. Plaintiff also sought to reopen his case to seek suspension of deportation.

In an opinion dated May 18, 1995, the BIA denied the motion to reopen and remand, finding that Udenze had failed to properly place the issue of ineffective assistance of counsel before the BIA by not complying

---

4. President Clinton signed the IIRIRA into law on September 30, 1996. This law severely restricts judicial review of actions by the Attorney General to execute removal orders.

5. The record is unclear as to the exact date of this first motion to the BIA to reopen and remand, but it was either October 17, 1994, or February 17, 1995.

with the procedural requirements for such a review. Further, the BIA refused to reopen the case so that Udenze might seek suspension of deportation because Udenze failed to make a prima facie case for extreme hardship. Udenze then appealed the BIA's denial of his motion to the Fifth Circuit.

On March 1, 1996, the Fifth Circuit issued an opinion denying Udenze's petition for review on the basis that the BIA did not abuse its discretion in denying—by order dated May 18, 1995—Udenze's motion to reopen and remand. On December 12, 1996, the Fifth Circuit issued this opinion as a mandate. At this point, Udenze has exhausted his direct appeals.

■ For the same reasons this Court could not examine the issues raised and ruled on in Udenze's first appeal to the Fifth Circuit, it cannot examine on collateral review any issues raised in the instant action which the Fifth Circuit passed upon in Udenze's second appeal to that court. This Court, then, dismisses with prejudice Udenze's claim for ineffective assistance of counsel and stay of deportation based on extreme hardship—as presented to the BIA in his initial motion to reopen and remand—for lack of jurisdiction.

■ To the extent that Udenze seeks by the action at bar to have this Court review the BIA's holdings concerning ineffective assistance of counsel or a stay of deportation based on extreme hardship on *habeas corpus* review, the Court concludes that, based on 8 U.S.C. § 1252, it has no jurisdiction to hear Udenze's petition for writ of *habeas corpus*. Assuming, however, that the Court does possess jurisdiction on *habeas* review, the Court concludes that the record reveals no constitutional infirmities. Accordingly, the Court denies Udenze's petition for the writ brought on grounds of ineffective assistance of counsel and extreme hardship if deported.

6. It is unclear from the record, but Udenze may have also simultaneously filed another motion to reopen and remand with the BIA.

7. Also in October of 1995, Udenze filed another motion with the BIA to reopen his case and

## Second Visa Petition

On or about January 18, 1995, in the midst of these other proceedings, Udenze and his second wife, Sharonda, filed with the INS a new petition for immediate relative status. The INS approved this petition on June 13, 1995. As a result, Udenze filed with the INS an application for adjustment of status on July 20, 1995, based on the visa petition approval.[6] A little over a month later, around August 29, 1995, INS issued to Udenze a notice of intent to revoke his approved visa petition, stating that his previous approval on June 13, 1995, was a mistake. On September 18, 1995, INS revoked this second visa petition for the reason that INS revoked Udenze's conditional status on his first visa back in September of 1989 because Udenze entered into his first marriage for the purpose of evading immigration laws.

Within a month after the revocation, Udenze appealed the revocation of the second visa petition to the BIA.[7] Almost a year later, on September 24, 1996, the BIA upheld the INS's revocation of Udenze's second visa petition. The BIA held that, based on the factors present at the time of the first petition revocation in 1989—Udenze's sham marriage and the fact that his first wife lied on the petition forms about her residence—INS had good and sufficient cause to revoke any *succeeding* visa petition pursuant to the provisions of 8 U.S.C. § 1155.

■ From the record, it appears that Udenze did not appeal or petition for review of the BIA's holding to the Fifth Circuit as provided by current immigration law. Consequently, Udenze has not exhausted his avenues of appeal and review, and in any event, this Court does not have jurisdiction over direct appeals from the BIA. *See* 8 U.S.C. § 1252. The Court grants Respondents' motion to dismiss this claim.

■ To the extent that Udenze may be seeking review under *habeas corpus*, the Court concludes that because he has not

remand to INS, which the Court will consider later in this opinion. It is unclear what became of the motion to reopen and remand which Udenze filed with the BIA in July of 1995.

exhausted his direct appeals, he may not seek such review here. The Court grants Respondents' motion to dismiss this claim on this ground as well.

In the alternative, and assuming jurisdiction over this claim for *habeas* relief, the record reveals no error of constitutional magnitude in either the actions of the INS in revoking Udenze's petition, nor in the decision of the BIA in affirming the revocation. Neither does it appear that these decisions were the products of clear error or abuse of discretion, assuming such a standard may be applied under these circumstances. In short, the Court denies Udenze the writ on his claim that the INS incorrectly and unconstitutionally relied upon his previous revocation to revoke his second visa petition.

### Second Motion to the BIA to Reopen and Remand

Some time in October of 1995, shortly after the revocation of the second visa petition, Udenze filed a second—or possibly third—motion with the BIA to reopen and remand his case for adjustment of status and suspension of deportation based on the fact that he was now married to a United States citizen and was a father to two children who were citizens. On September 24, 1996, contemporaneously with the issuance of its order upholding the revocation, the BIA issued an order denying Udenze's motion to reopen.

The basis for the BIA's denial was that, because Udenze did not have a valid, approved visa petition, he could not demonstrate that he was statutorily eligible for an adjustment of status. The BIA further held that Udenze could not prove that he was entitled to suspension of deportation because he could not show a prima facie case for extreme hardship. Specifically, the BIA noted that Udenze's second marriage and the births of his two children all took place well after the INS issued the show cause order in 1989 and after the immigration judge found Udenze deportable in April of 1990.[8] Conse-

quently, the BIA gave Udenze's current family status (his second marriage and two children) less weight in the balance of hardship factors.

Finally, the BIA denied Udenze's motion to reopen to the extent that he brought it on the basis of ineffective assistance of counsel. The BIA found that Udenze once again failed to follow the proper procedures for submitting such a claim to the BIA for review. Thus, as of the BIA's order of September 24, 1996, Udenze's condition of deportability remains valid.

■ As best the Court can tell from the record before it, Udenze failed to appeal the BIA's order to the Fifth Circuit, as required under current immigration law. As a result, this Court has no jurisdiction to consider Udenze's direct appeal from the BIA's decision of September 24, 1996, denying the motion to reopen Udenze's case and remand for adjustment of status. *See* 8 U.S.C. § 1252.

■ To the extent that Udenze seeks *habeas* relief from the BIA's order, the Court dismisses the claim for failure to exhaust his administrative remedies or direct appeals. Even assuming jurisdiction over this claim under *habeas corpus*, the Court concludes that no constitutional errors are apparent in the BIA's decision not to reopen and remand Udenze's case for adjustment of status, nor does the record reveal clear error or an abuse of discretion. Accordingly, the Court denies Udenze the writ.

In summary, the Court grants Respondents' motion to dismiss and dismisses all of Udenze's claims for relief, including his claims for declaratory and injunctive relief, for lack of jurisdiction.[9] In the alternative, the Court determines that the record reveals no errors of constitutional magnitude which might support Udenze's claims for relief brought pursuant to the petition for writ of *habeas corpus*, nor does the Court find either

---

**8.** The same immigration judge granted Udenze a suspension of deportation a year later on May 6, 1991, due to extreme hardship, but this did not alter the basic finding of deportability.

**9.** Udenze's complaint contains claims for declaratory and injunctive relief which must logically

derive from his claims on appellate or *habeas corpus* consideration, all of which the Court dismisses. As such, the Court dismisses Udenze's claims for declaratory and injunctive relief as well.

clear error or abuse of discretion in any of the acts of which Udenze complains. Further, the Court, because it lacks jurisdiction, denies Udenze's motion for stay of deportation.

It is therefore **ORDERED** that Udenze's Motion for Preliminary Injunctive Relief, filed on December 19, 1997, is **denied.**

It is **FURTHER ORDERED** that Udenze's Motion for a Stay of Deportation Pending Resolution of Petition, filed on December 19, 1997, is **declared moot.**

It is **FURTHER ORDERED** that Udenze's Motion for Evidentiary Hearing, filed on December 19, 1997, is **denied.**

It is **FURTHER ORDERED** that Respondents' Motion to Dismiss, filed on February 7, 1997, is hereby **granted,** such that all of Petitioner Udenze's claims are **dismissed with prejudice.**

It is **FURTHER ORDERED** that Udenze's Cross Motion for Summary Judgment, filed on February 24, 1997, is **denied.**

### FINAL JUDGMENT

This action came before the Court, Honorable Robert B. Maloney, presiding, and the issues having been duly considered and a decision having been rendered:

It is **ORDERED** and **ADJUDGED** that Plaintiffs' complaint is **dismissed with prejudice.**

It is **FURTHER ORDERED** that Petitioners' application for the writ of *habeas corpus* is **denied with prejudice.**

It is **FURTHER ORDERED** and **ADJUDGED** that all relief not specifically granted herein is denied.