124 F.3d 205
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ioan RUSU, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 96-3832.
 United States Court of Appeals, Seventh Circuit.
 Aug. 7, 1997.
 Order
 
 1
 Ioan Rusu, a citizen of Romania, came to the United States as a tourist in 1991 and overstayed his visa. After the INS began deportation proceedings against him in 1993, Rusu filed an application for asylum, claiming that he would be subject to persecution on account of his religion (Pentecostal), his anticommunist views, and his support for the restoration of the monarchy. The immigration judge and Board of Immigration Appeals rejected this application and ordered Rusu deported.
 
 
 2
 Rusu contends that his father and grandfather suffered persecution under the governments that held power during the 1940s and 1950s (when Romania was first an ally of Germany, and then occupied by and an ally of the U.S.S.R.). During the 1960s Rusu was questioned by the Securitate for playing rock music. After his conversion to the Pentecostal faith in 1968, he was questioned and beaten by the Securitate; attempts to defect during the 1970s and 1980s were foiled. But the dictatorial regime of Nicolae Ceausescu fell at the end of 1989, and the BIA concluded, with support in the record (and in our cases) that Romania does not now persecute on account of religion or political opinion. See Dobrican v. INS, 77 F.3d 164 (7th Cir.1996); Anton v. INS, 50 F.3d 469 (9th Cir.1995). Rusu disagrees with these conclusions, but they have the backing of the State Department, whose country reports supply the substantial evidence essential to a decision by the Board.
 
 
 3
 No one supposes that today's Romania is a model of tolerance; Rusu recounts a statement by relations who remain in Romania that in 1992 an Orthodox priest threatened to burn down the family house if the family continued to distribute the Bibles Rusu sent them. But the immigration laws do not turn isolated events of this kind into a right to remain in the United States; if they did, then no one could be deported, given widespread private prejudice and civil strife.
 
 
 4
 Persecution at the hands of a displaced political regime may entitle a victim to asylum or withholding of deportation, but we have stressed in Bucur v. INS, 109 F.3d 399 (7th Cir.1997), and other recent cases, that only the most serious persecution--more severe than the kinds of discrimination that ethnic and religious minorities encounter the world around--supports asylum when there is no prospect of future persecution. See also 8 C.F.R. § 208.13(b)(1)(ii) ("compelling reasons"). The BIA concluded that Rusu has not established this sort of persecution, and its finding is not clearly erroneous. Rusu's other arguments do not require separate discussion.
 
 
 5
 AFFIRMED.