**Ioan RUSU, Petitioner,**

v.

**Janet RENO, as Attorney General of the United states, Doris Meisner, as Commissioner of the Immigration & Naturalization Service, and Brian Perryman, in his capacity as District Director of the Immigration & Naturalization Service, Respondents.**

No. 98 C 0036.

United States District Court, N.D. Illinois, Eastern Division.

April 9, 1998.

Royal F. Berg, Chicago, IL, for Petitioner.

U.S. Attorney's Office, Chicago, IL, for Respondents.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Ioan Rusu ("Rusu") petitions for a writ of habeas corpus pursuant to 28 U.S.C. §§ 1651 and 2241 and Art. I, § 9, cl. 2 of the Constitution. Rusu is in custody of the Immigration and Naturalization Service ("INS") pursuant to a final order of deportation. He contends he is being held in INS custody in violation of his rights to due process and equal protection of the law. The petition names Janet Reno, Attorney General of the United States, Doris Meisner, Commissioner of the INS, and Brian Perryman, Chicago District Director of the INS, as respondents. Respondents move to dismiss the petition for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. Rusu responds to the motion to dismiss and cross-moves for summary judgment and for release on bond.

### BACKGROUND [1]

Rusu is a native and citizen of Romania. Pet. ¶ 11; Resp. Ex. 1. He entered the United States as a "visitor for pleasure" on November 15, 1991, at Chicago, Illinois. Resp. Ex. 1; Pet. Ex. 6. On October 7, 1993, the INS instituted deportation proceedings against Rusu pursuant to 8 U.S.C. § 1251(a)(1)(B) of the Immigration and Nationality Act ("INA"). Resp. Ex. 1. The INS order to show cause and notice of deportation hearing stated that Rusu had overstayed his permitted time in the United States. Pet. Ex. 6.

A deportation hearing before an immigration judge was held on August 2, 1995. Resp. Ex. 1. At the hearing, Rusu admitted the factual allegations in the order to show cause and conceded deportability. *Id.* The immigration judge then proceeded to rule on the merits of Rusu's application for asylum and withholding of deportation pursuant to

---

**1.** The following facts are drawn from Rusu's petition (cited as "Pet. ¶ __"), exhibits appended to Rusu's cross-motion for summary judgment (cited as "Pet. Ex. __") and selected portions of the certified administrative record submitted by respondents (cited as "Resp. Ex. __").

sections 208(a) and 243(h) of the INA. 8 U.S.C. §§ 1158(a) and 1253(h). *Id.* Rusu's application for asylum alleged past persecution and a fear of future persecution based on his monarchist political beliefs, his membership in a monarchist political movement and his religion, Pentecostal. *Id.* The immigration judge denied Rusu's application for asylum and withholding of deportation. *Id.* Finally, in lieu of deportation, Rusu sought and was granted voluntary departure under section 244(e) of the INA. 8 U.S.C. § 1254(e). *Id.* Rusu was given until January 31, 1996 to depart. *Id.*

Rusu appealed the decision of the immigration judge to the Board of Immigration Appeals ("BIA"). Resp. Ex. 2. In a *per curiam* decision dated October 11, 1996, the BIA affirmed the immigration judge's denial of Rusu's applications for asylum and withholding of deportation. *Id.* In brief, the BIA found that Rusu's allegations of past persecution, including a brief period of confinement for his political opposition, did not rise to the level of persecution required to justify a grant of asylum. *Id.* As to Rusu's claimed fear of future persecution, the BIA held Rusu had not shown a reasonable person in his circumstances would fear persecution on account of his political opinion, religion or social group. *Id.* Accordingly, the BIA dismissed Rusu's appeal. However, the BIA granted a thirty-day extension of Rusu's voluntary departure period. *Id.*

Next, Rusu appealed the BIA decision to the Court of Appeals for the Seventh Circuit. In an unpublished order issued August 7, 1997, the Seventh Circuit affirmed the BIA's decision. Resp. Ex. 3; *Rusu v. INS,* 124 F.3d 205, 1997 WL 461545 (7th Cir.1997). Rusu filed the present petition for a writ of habeas corpus on January 6, 1998. Rusu's petition contains two substantive constitutional claims. Rusu first asserts a due process claim. He alleges he is in the process of seeking landed immigrant status in Canada and hopes to be approved in the next several months. Pet. ¶ 5. He fears his chances of immigrating to Canada will be jeopardized if the INS executes his deportation. *Id.* In light of these circumstances, Rusu's counsel is allegedly in the process of preparing a request for an extension *nunc pro tunc* of Rusu's voluntary departure period and alter- natively, for a stay of deportation pending Rusu's achievement of landed immigrant status in Canada. Pet. ¶ 6. According to Rusu, it would violate due process of law to deport him prior to INS adjudication of those requests. *Id.*

Second, Rusu alleges the Nicaraguan Adjustment and Central American Relief Act, Pub.L. No. 105–100, 111 Stat. 2193–2201, enacted November 19, 1997, violates his right to equal protection. Pet. ¶¶ 9–12. The Act provides specified relief in the form of eligibility for adjustment of status to nationals of Nicaragua and Cuba, and suspension of deportation to nationals of former Soviet Bloc countries (including Romania). *Id.* Rusu asserts the Act deprives him of equal protection in two respects. First, section 202 of the Act renders Nicaraguan and Cubans who have been "physically present in the United States for a continuous period, beginning not later than December 1, 1995, and ending not earlier than the date the application for adjustment ... is filed" eligible for an adjustment of status to permanent residence. § 202(b)(1), 111 Stat. 2193, 2194. Rusu contends section 202's extension of eligibility solely to natives of Nicaragua and Cuba is arbitrary and capricious. Pet. ¶ 12. Second, Rusu focuses on the Act's criteria for eligibility for a suspension of deportation, found in section 203. Section 203 amends the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208; div. C, 110 Stat. 3009. In pertinent part, the section confers eligibility for suspension of deportation to Soviet nationals and nationals of the former Soviet Union "who entered the United States on or before December 31, 1990, who filed an application for asylum on or before December 31, 1991 ...." § 203(5)(C)(V), 111 Stat. 2193, 2197. Although Rusu filed an application for asylum prior to December 31, 1991, he did not enter the country until November 15, 1991. Pet. ¶ 11. Rusu contends that the Act's deadline of December 31, 1990 for entry into the United States is arbitrary and capricious. *Id.*

In response to the petition, respondents move to dismiss for lack of subject matter

jurisdiction and for failure to state a claim. Rusu cross-moves for summary judgment on the merits of the petition and moves for release on bond. Respondents filed a timely reply to the cross-motion for summary judgment.

## DISCUSSION

### I. JURISDICTION

The court must first address whether the jurisdictional restrictions enacted by IIRI-RA, Pub.L. 104–208, div. C, 110 Stat. 3009 (1996), deprive it of subject matter jurisdiction over Rusu's petition for a writ of habeas corpus. Rusu's petition alleges jurisdiction under 28 U.S.C. §§ 1651 and 2241, and the Suspension Clause, Art. I, § 9, cl. 2 of the Constitution. Respondents contend that section § 242(g) of the INA, 8 U.S.C. § 1252(g), as amended by § 306(a) of IIRIRA, requires dismissal of the petition for lack of subject matter jurisdiction. Rusu asserts, in essence, that this court retains jurisdiction to consider the merits of habeas petitions pursuant to § 2241. Alternatively, Rusu invokes jurisdiction under the Suspension Clause. Art. 1, § 9, cl. 2 of the Constitution.

### A. Legislative Background

The jurisdictional provisions of the INA have undergone a rapid succession of legislative amendments in past years, many of them aimed at curtailment of federal court jurisdiction over INS administrative decisions and adjudications. In particular, Congress has taken steps arguably intended to eliminate the federal courts' jurisdiction over petitions for habeas corpus seeking review of INS administrative decisions. First, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA") on April 24, 1996. Pub.L. No. 104–132, 110 Stat. 1214. Section § 404(e) of the AEDPA, entitled "Elimination of Custody Review by Habeas Corpus," eliminated the former INA provision governing habeas corpus review of deportation proceedings. Formerly, INA § 106(a)(10) provided: "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C. § 1105(a)(10) (1994). In addition, § 404(a) of the AEDPA inserted the following restrictive provision governing judicial review in lieu of the former provision: "Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), (D) [of the INA] … shall not be subject to review by any court." 110 Stat. 1214, 1276–77. The text of the AEDPA does not illuminate whether by eliminating the former § 106(a)(10) and replacing it with a provision that strictly limits judicial review in a specific class of deportation cases, Congress intended to deprive aliens of access to federal habeas relief altogether. However, this is one possible interpretation of Congressional intent.[2]

Next, on September 30, 1996, Congress enacted IIRIRA. Pub.L. No. 104–208, div. C, 110 Stat. 3009 (1996). Section 306 of IIRIRA repealed § 106 of the INA and replaced it with a new INA § 242 entitled "Judicial Review of Orders of Removal." IIRIRA § 306 (codified at 8 U.S.C. § 1252).[3] In general, the revised § 242 vests jurisdiction to review final orders of removal in the appellate courts. 8 U.S.C. § 1252(a)(1). Section 242(b) delineates specific procedural requirements governing petitions for review of orders of removal in the appellate courts.[4] Most importantly, the revised section § 242(g) of the INA, entitled "Exclusive Jurisdiction." 8 U.S.C. § 1252(g) provides:

> Except as provided in this section and notwithstanding any other provisions of law, no court shall have jurisdiction to hear

---

**2.** In keeping with this observation, district courts have concluded that federal habeas jurisdiction remains under § 2241, despite the language of §§ 404(a) and (e) of the AEDPA. *See Powell v. Jennifer*, 937 F.Supp. 1245, 1252 (E.D.Mich. 1996) ("[I]t is difficult to view § 401(e) as expressing anything other than congressional disapproval of habeas relief from orders of deportation"); *see also Mbiya v. INS*, 930 F.Supp. 609, 612 (N.D.Ga.1996); *Dunkley v. Perryman*, 1996 WL 464191, *2–3 (N.D.Ill. Aug.9, 1996).

**3.** The IIRIRA replaces the familiar term "deportation" with the term "removal."

**4.** IIRIRA's amendments to the former judicial review provision were clearly designed to expedite the removal of aliens by requiring them to start the review process in the court of appeals. *See* H. Rep. No. 104–469(I), 104th Cong., 2d Sess. 359, 463 (1996) (commenting on an earlier version of IIRIRA).

any cause or claim by or on behalf of any alien arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. § 1252(g). In light of these legislative changes, the court must assess whether § 242(g) deprives district courts of federal habeas jurisdiction.

## B. Applicability of § 242(g)

As an initial matter, the court must address the question whether § 242(g) governs Rusu's case, which was pending before the BIA on IIRIRA's date of enactment. A resolution of this question depends on the effective date of IIRIRA's statutory provisions. In general, the effective date of IIRIRA's amendments is "the first day of the first month beginning more than 180 days after the date of enactment [September 30, 1996]" or April 1, 1997. § 309(a). Yet, § 309(a) excepts §§ 303(b)(2), 306(c), 308(d)(2)(D), or 308(d)(5) from the general effective date. The effective date provision for § 242(g) is found in § 306(c)(1). The section, as amended by technical corrections on October 11, 1996, Pub.L. 104–302, 110 Stat. 3656, 3657, provides:

(c) **EFFECTIVE DATE**

(1) IN GENERAL—Subject to paragraph (2), the amendments made by subsections (a) and (b) shall apply as provided under section 309, except that subsection (g) of section 242 of the Immigration and Nationality Act (as added by subsection(a)), *shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act.*

§ 306(c)(1) (emphasis added). Although manifesting a clear intent that the provision

be applied retroactively, Congress failed to provide an effective date for § 242(g). Thus, the question arises whether § 242(g) was meant to take effect on the date of IIRIRA's enactment, as opposed to April 1, 1997.

■ The Seventh Circuit resolved this problem in *Lalani v. Perryman,* 105 F.3d 334 (7th Cir.1997) *(per curiam ).* In *Lalani,* the government argued that § 242(g) took effect on the date of enactment and thus deprived the court of jurisdiction over the appeal. The Seventh Circuit rejected this construction of the statute. The Seventh Circuit recognized that to interpret the statute in this manner would render meaningless "the provisions of the IIRIRA [the transition rules] deferring application of its procedures for six months ... because [the court] would have no jurisdiction in all cases immediately." *Id.* at 336.[5] Noting that § 306(c) refers back to § 309, the Seventh Circuit held that § 242(g) would not take effect until April 1, 1997—the general effective date provision. Thus, on April 1, 1997, § 242(g), unlike the other subsections, applies retroactively to past and pending deportation proceedings. *Id.* Accordingly, the fact that Rusu's deportation proceedings were commenced before April 1, 1997 does not preclude application of § 242(g).

## C. Jurisdiction Under 28 U.S.C. § 2241 and § 1651

■ The court must next address respondents' argument that § 242(g) divests this court of subject matter jurisdiction over habeas review of orders of deportation under both § 2241[6] and the All Writs Act, 28 U.S.C. § 1651.[7] Respondents argue that the plain terms of § 242(g) apply to Rusu's petition because it is a "claim ... arising from the

---

**5.** § 309(c) creates certain transitional rules delaying implementations of IIRIRA's amendments for aliens in exclusion or deportation proceedings before April 1, 1997.

**6.** Section 2241 provides, in relevant part:
(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the districts courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district· wherein the restrain complained of is had.

28 U.S.C. § 2241.

**7.** The All Writs Act provides:

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
(b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

28 U.S.C. § 1651.

decision or action of the Attorney General to ... execute removal orders against an alien ...." 8 U.S.C. § 1252(g). Respondents point out that the final order of deportation became subject to execution following the Seventh Circuit's affirmance on August 7, 1997. *See* 8 C.F.R. § 243.3(a)(4) (redesignated as § 241.33(a)(4), at 62 Fed.Reg. 10382, March 6, 1997). Rusu was taken into INS custody pursuant to the INS District Director's actions, as the Attorney General's delegee, to execute removal. In this sense, respondents argue, Rusu's claim can be said to have arisen from the Attorney General's decision or action to execute removal. Further, save for the limited exception for appeals of final orders of deportation, *see* 8 U.S.C. § 1252(a), no court has jurisdiction "notwithstanding any provision of law" to hear claims arising from those Attorney General decisions. Thus, respondents claim § 242(g) precludes jurisdiction over Rusu's habeas petition.

Rusu contends that § 242(g) does not apply to deprive this court of habeas corpus jurisdiction pursuant to § 2241; he relies on this court's recent opinion in *Laguerre v. Reno,* 1998 WL 100238, 97 C 8225 (N.D.Ill. Feb. 17, 1998) (Conlon, J.). Rusu asserts that he, like Laguerre, was placed in deportation proceedings prior to August 1, 1997 and therefore jurisdiction remains under § 2241. Rusu's reliance on this court's prior opinion is misplaced. In *Laguerre,* the court addressed a federal habeas petition seeking review of a deportation commenced because of specified criminal offenses. The government made the identical argument it makes here—the court lacks subject matter jurisdiction under § 242(g). However, the court ruled that Laguerre's petition was governed by IIRIRA's transitional provisions, as opposed to § 242(g). The transitional provisions were applicable, in part, because Laguerre satisfied the two statutory prerequisites for application of § 309(c). Namely, Laguerre was in deportation proceedings prior to August 1, 1997 and his deportation order became final *after* October 31, 1996.[8] In contrast, Rusu does not meet

both threshold criteria for application of IIRIRA's transitional provisions. Although Rusu was in deportation proceedings prior to August 1, 1997, his order of deportation became final on October 10, 1996, when the BIA dismissed his appeal. Thus, Rusu, unlike Laguerre, is not entitled to application of the IIRIRA transitional provisions.

In *Laguerre,* the court also concluded that it retained jurisdiction over habeas review pursuant to § 2241. This decision was made only with reference to the jurisdictional effects of § 309(c)(4)(G) and § 440(a). Thus, *Laguerre* is ultimately inapposite because the court was not required to resolve whether the precise terms of § 242(g) preclude habeas review by district courts under § 2241. It bears noting, however, that the court observed that § 242(g) appears gauged to divest federal courts of jurisdiction over all judicial review of administrative decisions or actions of the attorney general, including habeas corpus petitions. 1998 WL at *6.

The court must now conclusively determine whether § 242(g) does indeed divest federal courts of statutory jurisdiction over habeas corpus petitions for judicial review of attorney general actions to execute final orders of removal. There is a split in authority among the district courts that have directly addressed the continuing availability of habeas jurisdiction in light of IIRIRA. Some district courts have held that jurisdiction to entertain applications for habeas corpus under § 2241 was not disturbed by IIRIRA; others have concluded that habeas jurisdiction in deportation cases was abolished. *See, e.g., Barrett v. INS,* 997 F.Supp. 896 (N.D.Ohio 1998) (jurisdiction remains under § 2241); *Gutierrez–Martinez v. Reno,* 989 F.Supp. 1205 (N.D.Ga. 1998); *Morisath v. Smith,* 988 F.Supp. 1333 (W.D.Wash. 1997) (same); *Mojica v. Reno,* 970 F.Supp. 130 (E.D.N.Y.1997) (same); *Ozoanya v. Reno,* 968 F.Supp. 1 (D.D.C.1997) (same); *but see Marriott v. Ingham,* 990 F.Supp. 209 (W.D.N.Y. 1998) (court lacked jurisdiction under § 2241 to address habeas petition); *Charan v. Schiltgen,* 1997 WL 135938

---

**8.** Deportation orders "become final upon the earlier of—(i) a determination by the Board of Immigration Appeals affirming such order or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47).

(N.D.Cal. Mar.18, 1997) (§ 242(g) divests district court of jurisdiction over habeas petitions); *Mustata v. U.S. Dep't of Justice,* 979 F.Supp. 536 (W.D.Mich.1997) (same); *Mayers v. Reno,* 977 F.Supp. 1457 (S.D.Fla.1997) (same); *Udenze v. Strapp,* 977 F.Supp. 418 (N.D.Tex.) (same); *Bagshaw v. Strapp,* 1997 WL 726444 (N.D.Tex. Nov.12, 1997) (same). No court in this circuit has decided this issue. In *Yang v. INS,* 109 F.3d 1185, 1195 (7th Cir.1997), the Seventh Circuit stated, *in dicta* "effective April 1, 1997, § 306(a) [§ 242(g)] of the IIRIRA abolishes even review under § 2241, leaving only the constitutional writ, unaided by statute." Moreover, in *Fedossov v. Perryman,* 969 F.Supp. 26, 28 (N.D.Ill.1997) another judge of this court quoted this portion of *Yang,* stating that "[t]he Seventh Circuit already has recognized the breadth of Section 252(g)'s application ...." Given the split in authority on this issue, the Seventh Circuit's interpretation of the reach of § 242(g) persuasively tips the balance against an exercise of jurisdiction pursuant to either § 2241 or § 1651.

Indeed, the language of § 242(g) could not be clearer in its intent to eliminate other *loci* of jurisdiction. To reiterate, the provision states "notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of an alien...." § 242(g). Only through a contorted reading of the provision could a court conclude that "any other provision of law" does not include statutory habeas jurisdiction pursuant to § 2241 and the All Writs Act, § 1651. Similarly, it is a stretch to conclude that habeas corpus is not subsumed within the broad set defined by the phrase "any cause or claim by or on behalf on an alien." Accordingly, the clear language of the provision removes any basis for habeas jurisdiction under §§ 2241 or 1651. *Charan,* 1997 WL at *3.

The courts that have reached the contrary conclusion have found the presumption against repeal of habeas jurisdiction by implication discussed in *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), dictates that habeas jurisdiction under § 2241 remain vested in the district courts. *See, e.g., Mojica,* 970 F.Supp. at 158–163; *Ozoanya,* 968 F.Supp. at 6–7. In *Felker,* the Supreme Court addressed the effects of AEDPA's gatekeeping mechanism on the Court's original jurisdiction over habeas petitions. The challenged AEDPA provisions were designed to restrict the filing of successive habeas petitions. In particular, § 106(b)(3)(E) of the AEDPA states "[t]he grant or denial of an authorization by a court of appeals to file a second or third application shall not be appealable and shall not be the subject of a petition for rehearing or a petition for a writ of certiorari." The court proceeded to consider whether § 106(b)(3) (E) deprived it of the original jurisdiction conferred by §§ 2241 and 2254. The Supreme Court premised its analysis of the AEDPA provision on the presumption, articulated in *Ex parte Yerger,* 75 U.S. (8 Wall.) 85, 19 L.Ed. 332 (1868), against repeals of habeas corpus jurisdiction by implication. Finding no affirmative mention of the Court's authority to hear habeas petitions in Title I of the AEDPA or in the specific section restricting the Supreme Court's appellate jurisdiction, the Court declined to find a repeal of its jurisdiction over original petitions pursuant to § 2241 or § 2254.

This court finds *Felker* distinguishable in the context of § 242(g). Unlike the AEDPA provision at issue in *Felker,* the text of IIRIRA § 242(g) employs broad, sweeping language that does not require any repeal implication. *See Charan,* 1997 WL at *4 (§ 242(g) "meets the 'clear directive' requirement of *Felker*"). AEDPA § 106(b)(3)(E) announced a bar on specific forms of Supreme Court review, for example a petition for writ of certiorari. The writ of habeas corpus available under § 2241 or § 2254 was clearly not included in the section's specific enumeration. As distinguished from *Felker,* there is no doubt that § 242(g) applies to habeas jurisdiction. *See U.S. ex rel. Morgan v. McElroy,* 981 F.Supp. 873, 875 (S.D.N.Y.1997) ("While some courts have concluded that the court has not been divested of statutory habeas corpus jurisdiction by other statutory provisions, [citations omitted], those cases were not interpreting [§ 242(g)] which specifically mandates that result, and where no inference of repeal by implication is or can be at issue"). After all, the section deprives this court of jurisdiction over any "claim or cause of action" "notwithstanding any other provi-

sion of law." In sum, *Felker* does not stand for the proposition that Congress cannot curtail the federal court's habeas jurisdiction through such all encompassing language.

The demonstrable difference between the provision at issue in *Felker* and § 242(g) is well-illustrated by the Seventh Circuit's discussion of § 440(a) of the AEDPA in *Chow v. INS,* 113 F.3d 659 (7th Cir.1997). In *Chow,* the Seventh Circuit discussed whether § 440(a) divested it of appellate jurisdiction to review final orders of deportation. After concluding that § 440(a) did deprive it of jurisdiction, the Seventh Circuit addressed whether this restriction on review of deportation orders offended due process. The court determined that the due process question hinged, in part, on whether alternative avenues of relief remained available under § 404(a). As part of this inquiry, the court considered whether the language of § 440(a) evidenced "Congressional intent to preclude all forms of judicial relief." 113 F.3d at 668. The court then reasoned as follows:

> Section 440(a) does not state that the prescribed final orders of deportation "shall not be subject to review by an court." However, elsewhere in the AEDPA Congress has used more definite language to express its intent to preclude all forms of judicial review and relief. For example, Congress clearly expressed its intent to preclude judicial review of any type of claim relating to a decision issued under section 235(b)(1) of the INA, which allows an immigration officer to exclude without a hearing certain aliens seeking entry if the aliens do not intend to seek asylum. To this end, section 423(a) of the AEDPA amends section 106 of the INA to read:
> (e)(1) **Notwithstanding any other provision of law,** and except as provided in this section, **no court shall have jurisdiction to review** any individual determination, or to **entertain any other cause or claim, arising from or relating to the implementation or operation of section 235(b)(1).** Regardless of the nature of the action or claim, or the party or parties bringing the claim, **no court shall have jurisdiction or authority to enter declaratory, injunctive, or other equitable relief not specifically in this subsection nor to certify a class under Rule 23 of the Federal Rules of Civil Procedure.**
> § 423(a), 110 Stat. at 1272 (emphasis added). Because section 440(a) does not include this type of sweeping prohibition on judicial review of deportation orders, we will not read section 440(a) as foreclosing all avenues of judicial review. *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 2338–9, 135 L.Ed.2d 827 (1996) (defining to find implied repeal of Supreme Court habeas jurisdiction where other sections of the AEDPA expressly amended appellate court habeas jurisdiction).

*Id.* at 668. In conclusion, the *Chow* court held that § 440(a) did not offend due process because "other avenues of judicial review remain open to permanent resident aliens and because the Constitution does not guarantee direct judicial review of deportation orders." *Id.* at 669.

Similar reasoning applies here, especially given the evident textual similarity of § 423(a) and § 242(g). In contrast to the limited language of § 404(a), § 242(g)'s broad prohibition of the exercise of jurisdiction forecloses all forms of judicial relief available in the district court, including habeas corpus. The court therefore respectfully declines to follow the district courts that have found continuing availability of habeas jurisdiction pursuant to § 2241.

It merits mention that the new INA § 242 does preserve some limited form of habeas review. For instance, § 242(e) expressly contemplates habeas proceedings for review of orders under INA § 1225(b)(1). Section 1225(b)(1) provides for the inspection and expedited removal, by immigration officers, of aliens who have just arrived in the United States. The question remains in what venue these particular habeas proceedings would take place. For insight, the court looks to the language of § 242(g). Section 242(g) commences "[e]xcept as provided in this section [§ 242], no court shall have jurisdiction ...". Section 242(a)(1) vests exclusive jurisdiction for review of orders of removal in the court of appeals. It follows from this that the habeas proceedings referenced in § 1225(b)(1) are meant to take place in the court of appeals because they are but one

form of review of an order of removal. This reading of § 242 is consonant with that of several other courts. *See, e.g., Auguste v. Attorney General,* 118 F.3d 723, 725 (11th Cir.1997) (habeas petition dismissed for lack of jurisdiction because alien filed petition in district court as opposed to the appellate court, where § 242's procedures dictate the petition should be filed); *Bagshaw,* 1997 WL 726444 at *3 (district court dismissed habeas petition for lack of jurisdiction and stated that petition was improperly filed in the district court). Unfortunately for Rusu, however, he does not benefit from this limited preservation of habeas review.

### D. Jurisdiction under the Suspension Clause

█ The final question is whether the district court retains jurisdiction under the Suspension Clause of the Constitution.[9] The Suspension Clause, found in Article I, section 9, clause 2, states: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." The court looks to *dicta* in *Yang* for guidance as to the scope of habeas review the Suspension Clause requires in immigration cases. In *Yang,* the Seventh Circuit confessed considerable skepticism as to the scope of review available under the Suspension Clause. The court expressed, in relevant part:

Aliens may seek the writ that Art. I § 9 cl. 2 preserves against suspension. But we are reluctant to place weight on its availability, because the Supreme Court long ago made it clear that this writ does not offer what our petitioners desire: review of discretionary decisions by the political branches of government. *See, e.g., United States ex rel. Vajtauer v. Commissioner of Immigration,* 273 U.S. 103, 106, 47 S.Ct. 302, 304, 71 L.Ed. 560 (1927) ("Deportation without a fair hearing on charges unsupported by any evidence is a denial of due process which may be corrected on habeas

corpus. But a want of due process is not established by showing merely that the decision is erroneous."); *United States ex rel. Tisi v. Tod,* 264 U.S. 131, 132, 134, 44 S.Ct. 260, 260, 261, 68 L.Ed. 590 (1924) ("Tisi's claim to be discharged on habeas corpus rests wholly upon the contention that he has been denied due process of law. . . . [M]ere error, even if it consists in finding an essential fact without adequate supporting evidence, is not a denial of due process of law.").

109 F.3d at 1195. The two district courts that have addressed the availability of habeas jurisdiction under the Suspension Clause in the IIRIRA context have reached conclusions consistent with this narrow view of the jurisdiction available to immigrants. *See Charan,* 1997 WL at *3–5 (petitioner's habeas claims did not fall within narrow jurisdictional scope of the Suspension Clause); *accord Mayers,* 977 F.Supp. at 1461–62. In light of the Seventh Circuit's view and the sound reasoning of the *Mayers* and *Charan* courts, this court does not find jurisdiction over Rusu's petition under the Suspension Clause.

This conclusion is mandated to some extent by a fundamental axiom of federal jurisdiction. The lower federal courts are themselves creatures of statute. "[C]ourts created by statute have no jurisdiction other than that which has been conferred upon them by statute. *Sheldon v. Sill,* 49 U.S. (8 How.) 441, 449, 12 L.Ed. 1147 (1850)." *Chow,* 113 F.3d at 669. § 242(g) deprives the courts of all statutory jurisdiction and leaves the "constitutional writ, unaided by statute." *Yang,* 109 F.3d at 1195. Because the Suspension Clause does not specifically invest the district court with jurisdiction over claims similar to Rusu's, this court lacks any basis, statutory or otherwise, to exercise jurisdiction over his claims.

9. Respondents take a peculiar position with respect to the availability of jurisdiction under the Suspension Clause. They entitle one argument section of their opening memorandum of law "The Court Lacks Jurisdiction Under Article I, Section 9, Clause 2 of the Constitution." Yet, confusingly, they proceed to argue the merits of Rusu's habeas petition in that section. They fail

to explain what the requirements of jurisdiction under the Suspension Clause are and why the court lacks jurisdiction thereunder. Despite this odd lapse, the district court must first determine whether any jurisdiction is available under the Suspension Clause. This determination does not involve a discussion of the merits of Rusu's constitutional claims.

### E. Motion for Release on Bond

As a final matter, the court also lacks jurisdiction over Rusu's motion for release on bond. IIRIRA § 303(a) amended 8 U.S.C. § 1226(e) to eliminate judicial review of the Attorney General's decisions "regarding the detention or release of any alien or the grant, revocation or denial of bond or parole." 8 U.S.C. § 1226(e) (1997). Accordingly, Rusu's motion for release on bond must be denied.

### CONCLUSION

Section 242(g) divests this court of subject matter jurisdiction to review Rusu's petition for a writ of habeas corpus. Accordingly, respondents' motion to dismiss for lack of subject matter jurisdiction is granted. Rusu's petition for a writ of habeas corpus is dismissed for lack of jurisdiction. Rusu's cross-motion for summary judgment and motion for release on bond are denied.